Robert L. JOHNSON, Plaintiff,

v.

Catherine ANGLE et al., Defendants.

Civ. No. 71-L-222.

United States District Court,
D. Nebraska.

Nov. 5, 1971.

---

Robert T. Grimit, Lincoln, Neb., for plaintiff.

Willis R. Hecht, Lincoln, Neb., for defendants.

## MEMORANDUM and ORDER

VAN PELT, Senior District Judge.

Plaintiff has brought this action under 42 U.S.C.A. §§ 1983, 1985 (1964), seeking injunctive and compensatory relief because of defendants' alleged denial of plaintiff's rights under the First, Fifth, Ninth and Fourteenth Amendments to the United States Constitution. Trial was had to the court. Briefs have been submitted and the case is now ready for decision.

At issue is the validity of the dismissal by the Board of Education of the City of Lincoln of plaintiff, who was serving as a tenured mathematics teacher at Millard Lefler Junior High School.

The general charges made against Johnson are incompetency and failure to give evidence of professional growth. The Board of Education failed to state any specific findings of fact, thus making it impossible to determine if its decision was based on only one or on both of these charges.

While some oral evidence was heard by the court, in the main the evidence is that adduced before the Board of Education at two separate hearings, a transcript of which was reoffered in this case.

It should be stated at the outset that no claim of immorality is made against. Johnson, nor is the content of his teaching or his educational training questioned. The issue is his manner of teaching, his handling of pupils, and his relationship with their parents. Johnson does not claim that he was discharged because of the exercise in the classroom of his constitutional right to freedom of speech or other similar constitutional claims which appear in some of the dismissal cases.

In deciding the issues submitted, it is necessary to examine the procedures which constitute due process and determine whether such procedures were afforded plaintiff. There are also questions relating to the impartiality of the School Board and one or more of its members; the refusal of the administration to disclose the names of parents or students who had made complaints as to plaintiff's actions; whether permitting Mrs. Virginia Taylor to testify violated the agreement and understanding of counsel; and whether permitting opinions to be expressed based upon the complaints, which were not made known to plaintiff and not disclosed in the evidence, denied him his right of cross-examination and confrontation.

The comments which follow will constitute the court's findings of fact and conclusions of law.

Mr. Johnson holds a Master of Education degree in secondary education. He has completed 54 hours of study beyond the Master's degree. He entered the Lincoln School System in 1951 as a mathematics teacher at Lincoln Northeast High School. In 1960 he was transferred to Robin Mickle Junior High School. He stayed there until 1969 when he was transferred to Millard Lefler Junior High School where he was teaching when the events involved here arose.

Plaintiff has been active in various teacher organizations. At one time he served as president of the Lincoln Education Association, an association representing the teachers in the Lincoln Public Schools. He is now the president of the National Council of Urban Education Associations, a national group composed of about 150 local teacher associations. He is a member of the Board of Directors of the National Foundation for the Improvement of Education, and a member of a committee of thirty teachers from across the United States which acted as a consulting committee to the United States Office of Education.

Four witnesses expressed the opinion that Johnson was incompetent as a teacher while others questioned his effectiveness with certain students. Each in expressing their opinion relied in part upon complaints received from parents or pupils. As above indicated, his incompetency or ineffectiveness was not related to knowledge of the subject which he was teaching but to his classroom performance and to conferences, or lack of helpful conferences, with his pupils and with parent reaction. Suffice it to say, with three principals testifying that he was incompetent, even though some had previously given Johnson satisfactory ratings, the court must conclude that the evidence was sufficient for the Board to find that Johnson was incompetent as a teacher. It is regrettable, as above indicated, that it did not recite findings of fact and state the specific grounds for dismissal. Even if factual grounds existed for a dismissal, Mr. Johnson, as a tenured teacher, was entitled to a "due process hearing." Hence we must turn to a consideration of the procedures before and at the hearings.

The claimed lack of professional growth did not relate to professional growth as defined in the Nebraska statutes.

Under Neb.Rev.Stat. § 79–1260, a tenured teacher may have his teaching contract canceled if there is a "failure to give evidence of professional growth." "Professional growth" is again mentioned in section 79–1261, which reads:

> "Every six years permanent teachers in a fourth or fifth class school district shall give such evidence of professional growth as is approved by the school board in order to remain eligible to the benefits of sections 79–1255 to 79–1262. Educational travel, professional publications, work on educational committees, six semester hours of college work, or such other activity approved by the school board, may be accepted as evidence of professional growth."

In the past the Lincoln School Board has approved activities such as formal classwork, workshops, institutes, and college or adult education courses as acceptable evidence of compliance with the statutory standards. It is conceded by the defendants that the plaintiff has met the statutory requirements for professional growth as well as the standards set by the Board. However, it is the defendants' contention that the plaintiff did not meet *Superintendent Prasch's* definition of professional growth, a definition which was not known to the plaintiff until the hearing. Whether the Superintendent can substitute his own definition of professional growth for that of the statute must be decided.

Plaintiff is what is termed a "tenured" teacher in a Class IV school district. As such, he is subject to the rights and duties of the Nebraska statutes, Neb.Rev. Stat. §§ 79–1255 to 79–1262 (Reissue 1966). Section 79–1259 provides:

> "Any indefinite contract with a permanent teacher in a fourth or fifth class school district may be canceled

only by the school board, by a majority vote, evidenced by a signed statement in the minutes of the school board, in the following manner: No contract shall be canceled until the date for consideration of the cancellation of such contract nor until, in case of teachers, supervisors, and principals, the superintendent of schools shall have given the school board his recommendations thereon, and it shall be the duty of such superintendent to present such recommendations to the school board, within the time fixed by the board. Not less than thirty days nor more than forty days before consideration by the school board of the cancellation of contract, the teacher in question shall be notified in writing of the exact date, time when, and place where such consideration is to take place. If the teacher desires, he must be furnished a written statement of the reasons for such consideration within five days after filing with the board a written request for such a statement. If the teacher requests a hearing before the school board, the request must be granted. Such hearing must be held within twenty days after the request is filed and the teacher shall be given at least ten days' notice of the time and place of the hearing. *Such teacher shall have the right to respond to the reasons for the proposed cancellation of his contract and to be accompanied at the hearing by someone qualified to speak for him.*" (Emphasis supplied)

This section indicates that the Nebraska Legislature has incorporated due process into the proceeding, especially with regard to a teacher being able to "respond to the reasons for the proposed cancellation . . . ." The attorney for the defendants agreed that due process applies, when in his "Brief in Support of Objections to the Granting of Temporary Restraining Order" he stated: "It is conceded that due process of law must obtain in procedures such as the one now involving the plaintiff. . . . Suffice to say that my conception of the term [due process of law] is basic fairness; the granting to all persons of a reasonable opportunity to present his side of the case and to be furnished with the knowledge necessary to provide an adequate defense or presentation on his part."

 As is hereafter noted in the discussion of due process, the charges against a teacher must be such that the teacher can respond as provided in Section 79–1259, *supra*. When the superintendent attempts to give his own definition of professional growth and substitute it for the statutory definition without the teachers of his system, and particularly in this case the teacher the Board votes to discharge, having knowledge of the superintendent's definition, it is clear that there would be no way for such teacher to respond.

In addition, Exhibit 3, contained in plaintiff's Exhibit 1–(B), would have led plaintiff or any other Lincoln system teacher to believe that he had met the requirements for professional growth. Exhibit 3 is on a printed form dealing with professional growth activities. It is the report of the action of the evaluation committee, which is provided for by action of the Lincoln Board. There is typed into this printed form the following: "This completes requirements for this professional growth period. Your next growth period will begin Sept. 1, 1972." It is signed by the chairman of the committee. In view of this, to be charged as Johnson was in the letter of April 2, hereafter set forth in full, with failure to give evidence of professional growth, would be surprising. His request for the details, which was refused, was in order.

It is evident from the Nebraska statute, Section 79–1261, above set forth, that the Board of Education has approval rights in determining what shall be evidence of professional growth.

The personnel handbook (Exhibit 6) provides for such evidence of professional growth as is "approved by the Board of Education." There is then outlined for six printed pages allowable profes-

sional growth activities and the evaluation committee is provided for. Thus it is clear that the Board has attempted to make a determination of what is evidence of professional growth and has so informed the teachers.

Superintendent Prasch's definition of professional growth is shown on page 74 of Exhibit 1–(A):

"Q—And would you explain to us how you are defining professional growth if you're not defining it in the seven page Procedures set out in this handbook?

A—Yes; the seven pages, the Procedures set out in the handbook, are in terms of course requirements, professional involvement, travel, other kinds of things which are submitted by teachers as evidence that they have met professional growth criteria.

My definition of professional growth includes the ability of a teacher to improve performance as the result of anything that they have done in that respect or in any other way so that over a period of time problems that are met in the classroom can be alleviated by that professional growth.

For example, so that the teachers could learn to have greater sensitivity for youngsters over a period of time, or adjust their teaching practices so that kids could achieve and receive good grades.

Q—So your use of professional growth, or failure to show professional growth in the charge you made against Mr. Johnson is not that type of professional growth set forth in the handbook?

A—I think that's essentially true, the things set forth in the hand book are items by which teachers can meet certain criteria for professional growth. Whether or not the growth takes place, I think, is another matter."

■ If the Board is to apply Superintendent Prasch's definition, it seems clear that it should be formally adopted by the Board and set forth in the handbook so that all teachers will know of it. To set forth one definition and then apply another certainly runs contrary to the definition of the Board's attorney of due process, namely "basic fairness."

■ Manifestly, Johnson had met not only the statutory professional growth requirements but those of the evaluation committee also. This court doubts if the superintendent under any circumstances could be permitted to substitute his own definition of professional growth for that of the statute. Certainly it can not be done as the vehicle for the discharge of the teacher when the teacher has no knowledge of the superintendent's definition. If the Board's dismissal was based on lack of professional growth it is clear that due process was not afforded and that the evidence would not justify dismissal on this ground.

■ It was noted above that the Board did not give the specific grounds for its decision to terminate Johnson's contract. The professional growth charge points up the necessity for its doing so. To do so imposes no harsh burden on the Board, and would make the basis for its action clear. An example of the fairness of such a requirement is seen here. If the Board's decision is based only on the professional growth charge, the decision would clearly be erroneous. As discussed earlier, Superintendent Prasch cannot be allowed to substitute his own definition of professional growth for that of the statutes or for the Board's definition if one has been given. Because the Board did not state the basis for its decision, this court can only speculate as to the grounds which were relied upon in terminating the plaintiff's contract. Requiring the Board to list its grounds presents no undue hardship, considering the seriousness of dismissal to a teacher.

We turn next to the question of due process as it relates to the hearings.

At the hearing, Superintendent Prasch and Mr. Sawin, personnel director, and seven principals or assistant principals, present or past, testified on behalf of the administration. Several of the witnesses relied in giving their opinion of incompetency on the complaints of parents of students which were in an administration file relating to Johnson but which were never offered in evidence. One parent, Mrs. Taylor, testified at the hearing. Plaintiff was able to cross-examine these witnesses but did not have access to the complaints. It should be stated here that plaintiff testified in his own defense and called three teachers from the Lincoln system on his behalf.

The general import of the administration's witnesses' testimony was that plaintiff was incompetent as a teacher in that he intimidated pupils and did not develop the necessary "rapport" with a large percentage of his classes. There was also evidence of a failure rate in two of his classes which was high in relation to the number of failures given by other junior high school math teachers. The evidence, however, discloses that there were other teachers who had as high a failure rate and who were not discharged because of it, so the court concludes that the School Board gave little consideration to the failure rate.

An examination of plaintiff's file prior to the hearing would have shown no unsatisfactory ratings and would have shown Johnson ranked in the overall appraisal in a 2 or 3 position on a scale ranging from 1 at the top to a bottom rating of 5. 2 is good; 3 is satisfactory. Some of these ratings were by principals who testified against him at the School Board hearing. It should be pointed out that plaintiff received a 4 rating ("Fair") in 1965 in the area of "Understanding of Pupil Behavior" (See Exhibit 7 (1–B)); a 4 rating in 1968 on "Relationships with Parents" (See Exhibit 8); and two 4 ratings in 1970 in the categories of "Understanding of Pupil Behavior" and "Provision for Individual Differences" (See Exhibit 9). His overall appraisal in 1968 was a 2 (excellent), and in 1970 a 3, which by that time was defined as "Meets District Standards." As late therefore as the close of the 1970 school year one examining Johnson's file would not have sensed the charges made in the Spring of 1971. In October, 1971, as shown by Exhibit 17, a conference was held with Mr. Johnson by his principal and by the math consultant, for two purposes, one of which was to inform him about numerous parent concerns and complaints. It was decided that the principal and math consultant would make frequent visitations to Mr. Johnson's room and make suggestions for possible improvement of student relationships. Only one such visitation report is in evidence, that of December 17, 1970, which indicates it is the principal's third visit to Johnson's classroom. In this report, the appraiser made some negative comments dealing with the class atmosphere and recommended that Johnson choose his statements more carefully. He pointed out some statements Johnson made to students as to which the court is in agreement that they were objectionable and achieved no purpose. This principal on February 2d recommended to Dr. Sawin that Johnson "be reassigned to another building or another position." He mentions the requests of pupils and parents to change from Mr. Johnson's class to another teacher and that the requests have steadily increased "thus illuminating the growing dissatisfaction" and concludes with the statement: "Mr. Johnson is a very capable and intelligent person, but I do not believe he possesses the patience or empathy to work effectively with junior high students." The letter nowhere contains a recommendation that he be discharged or the statement that he was incompetent.

The superintendent testified to having had a conference with Johnson in January. He did not tell Johnson that he was going to recommend his discharge although the superintendent seems to believe that Johnson should have so understood from the subjects discussed. Both Superintendent Prasch and Johnson are in agreement that the conference was

friendly. Prasch says he told Johnson he should be looking for other kinds of employment. Johnson says Prasch said he was misassigned and they discussed things he might be looking for, and that he (Johnson) assumed he was on the wrong level or should have more administrative work and not that he was to be fired. It is my conclusion from reading and hearing the superintendent's testimony, that if I were Johnson, I would not in January, 1971 have thought that I was about to be fired.

On or about March 16, 1971, the plaintiff received a letter from Mr. Prasch stating that plaintiff's name was on the list of employees who had not been recommended for contract renewal. On March 26, 1971, plaintiff received a letter from Carroll R. Sawin, Assistant Superintendent for Personnel in the Lincoln Public School System, informing him that Sawin was recommending to the superintendent that his teaching contract be withheld pending an investigation of his teaching performance. The letter stated that the plaintiff was entitled to know the "specific charges" and that he could have a formal hearing if he desired. On March 27, 1971, plaintiff wrote to Sawin and requested the specific charges. On April 2, 1971, Sawin wrote the following letter to the plaintiff:

"This letter is to inform you that the Superintendent of Schools will recommend to the Board of Education that your contract be terminated for the reasons of incompetency and failure to give evidence of professional growth. In response to your request, the specific charges are as follows:

1. You create a classroom climate by word and action that inhibits learning. You intimidate students— you frighten them so they will not seek your help. There is little evidence of patience and empathy for students. There is a tendency on your part to ridicule or deteriorate students' confidence.

2. You have an excessive number of failures although the classes to which you have been assigned present no unusual instructional problems.

3. There now is and for several years past, has been pronounced resistance on the part of students and parents to placement in your classes.

4. Several transfers in assignment and location have not alleviated the condition.

"Consideration and action by the Board of Education with respect to cancellation of your contract will take place on May 11, 1971, in the Board Room, PSAB, at 11:00 a. m., or as soon thereafter as the matter may be reached. Should you desire, you may request a formal hearing before the Board of Education in advance of the above specified date. In that event, we will confer with you relative to a suitable time and place."

Plaintiff's attorney replied to Sawin, saying that he believed the charges were not specific enough, in that they failed to include the following:

"1. The specific charge with respect to Mr. Johnson's alleged failure to give evidence of professional growth.

"2. The classes and years in which Mr. Johnson's failures are claimed to be excessive.

"3. The classes and years in which there was pronounced resistence [sic] to placement of students in Mr. Johnson's classes.

"4. The relationship between the resistence [sic] on the part of students and parents to placement in Mr. Johnson's classes and Mr. Johnson's alleged incompetency.

"5. The transfers in assignment and location referred to.

"6. The specific conduct of Mr. Johnson in the classsroom which allegedly inhibits learning and intimidates students.

"7. The nature of the evidence in support of the charge that 'There is little evidence of patience and empathy for students.'

"8. The conduct on the part of Mr. Johnson with respect to the charge that 'There is a tendency . . . to ridicule or deteriorate students' confidence.'

"We also demand that we be furnished the name and address of each person making complaints with respect to Mr. Johnson and resisting the placement in Mr. Johnson's classes. We also demand copies of any documents which you may have in your file not already furnished to us which in any way relates to the charges against Mr. Johnson or which may have formed the basis for your action against Mr. Johnson."

Upon the advice of the attorney for the School Board, Mr. Sawin refused to furnish the requested information. However, the parties did have a meeting at which plaintiff and his counsel were furnished everything in the administration's file on the plaintiff, except the notes and memoranda from students and parents. Ultimately the administration told plaintiff he could see them if he did not "use" them. Plaintiff refused this offer. A Board hearing on the matter was set for May 20, 1971. Plaintiff then sought a preliminary injunction in this court to restrain the Board from meeting. That request was denied (filings Nos. 7 and 8). A Board hearing was then had on May 20th which recessed at 11:45 P.M. until May 26th at 1:00 P.M. At 4:05 P.M. on the 26th the hearing concluded and the Board's decision was announced shortly thereafter.

Important in determining the due process issue is to consider whether the Board had binding rules of dismissal procedure, as shown in Exhibits 17 and 19. Admittedly these rules were not followed. The personnel department of the Lincoln School System prepared a booklet entitled "Contract Termination Procedure" (See Exhibits 17 and 19). The purpose of the booklet was stated as follows:

"The following material has been compiled to assist the administrator in dealing with this problem: 1. The reasons for dismissal set forth in Nebraska statute; 2. The type of material and evidence needed and the characteristics of this material; 3. A systematic, concise time schedule with appropriate personnel activity designed to insure the rights of the employee and his access to redress is included."

It is not clear just when it was first drafted. It had been revised "as time went on." The booklet carries the Board of Education's seal on the front cover and lists the Board members, along with the Board's seal, on the back cover. The Board's testimony is that it was never officially adopted although it was presented to the Board for their inspection. Superintendent Prasch stated at the Board hearing that one of the purposes of the document was to insure that the teacher received his rights. The booklet was distributed to principals and others, including Mr. Johnson. It appears that a copy was not given to every Lincoln teacher. Plaintiff testified that he relied on the booklet as setting forth the procedure that would be followed in dismissals.

There is no language in the booklet indicating that the school system did not intend to be bound by the procedures set forth. The booklet's language is mandatory in many instances, leaving no doubt that certain steps *must* be taken. For example,

"[A]dministrators *must* be cognizant of the legal requirements and avoid procedural errors by working within the framework of sound personnel practices."

"Full knowledge of procedures and assurance of central office support remove any excuses for administrative inaction."

"In every case where dismissal is sought, experience has shown that principals should be prepared to show valid evidence proving:

"1. Persistent Nature of Difficulties.
. . .
"2. Repeated Warnings. . . .
"3. Frequent Assistance. . . .
"4. Close Supervision. . . .

"5. Ordinary Class Structure. . .

"All of the above types of evidence *must* be:

"1. Specific in Nature. . . .

"2. Extensive in Scope. . . .

"3. Recorded. . . .

"4. Dated and Timed. . . .

"5. Original Drafts. . . ." (Emphasis supplied)

There is also a timetable in the booklet for the termination of a teacher's employment. Among the dates listed are:

"December 1 5. Conference with Personnel Office involving teacher, principal and other concerned administrators. *Specific charges made.*' "

"January 25 9. Conference with Principal, teacher and Personnel Office—*specific charges are made*—employee is advised that his re-election will not be recommended to the Board of Education or that it will be delayed until May. Executive Secretary of LEA is notified."

"February 25 14. Employee * is notified in writing of the action taken by the Board of Education.

* Tenure employees must be given the exact date, time and location, where the Board of Education will take final action. Also, included is a notification that a statement of charges will be provided upon request of the employee.

"March 1

(Optional) 16. Employee requests a written statement of charges from Board of Education."

"By March 6 17. Within 5 days Board of Education must supply employee with such a statement."

"Between March 10

–March 30 19. Hearing *must* be held within 20 days after request is filed. Employee shall be given at least 10 days notice of time and place of hearing." (Emphasis supplied)

■ Some of the dates given in the timetable are dates required by Nebraska statutes. Section 79–1259, above quoted, provides in part: "If the teacher requests a hearing before the school board, the request must be granted. Such hearing must be held within twenty days after the request is filed and the teacher shall be given *at least* ten days' notice of the time and place of the hearing." (Emphasis supplied) Thus, the statute sets the *minimum* time sequence. However, it does not preclude a school board setting up other dates, so long as the statutory minimum is met. *See* Owens v. School Dist. No. 8R of Umatilla County, 473 P.2d 678, 681 (Or.App.1970). It is conceded by the defendants that the procedures outlined in the booklet were not followed in terminating plaintiff's contract. They argue that the schedule was never meant to be binding and that School Board approval of the timetable was never given.

It is the court's opinion that the Board should have complied with the procedures set out in the "Contract Termination Procedure" booklet. Even though the booklet may never have had official approval by formal Board action, the members were well aware of its contents. A separate handbook, "Policies and Procedures Handbook for Professional Personnel," containing many of the Board policies and procedures, has been considered by the School Board to be binding on the teachers, even though there were items in the handbook which had not had official approval in the Board minutes. The same is true of the revisions which Dr. Sawin made to the handbook.

The Nebraska Supreme Court has held that estoppel applies against a municipal corporation. *See, e. g.,* State ex rel. Cox v. McIlravy, 105 Neb. 651, 181 N.W. 554 (1921); Village of Deshler v. Southern Nebraska Power Co., 133 Neb. 778, 277 N.W. 77 (1938); Inslee v. City of Bridgeport, 153 Neb. 559, 45 N.W.2d 590 (1951); School District No. 49 v. School District No. 65–R, 159 Neb. 262, 66 N.W.2d 561 (1954). As stated in May v. City of Kearney, 145 Neb. 475, 489, 17 N.W.2d 448, 457 (1945): "The general rule is that while ordinarily a municipality may not be estopped by unauthorized conduct, representations,

promises or pledges of the officers, *it may, within the limitation of its legal powers, be estopped by its official acquiescence in, and approval of, acts originally unauthorized.*" (Emphasis supplied) This language was referred to in connection with a school board in School District No. 49 v. School District No. 65–R, 159 Neb. 262, 268, 66 N.W.2d 561, 566 (1954).

■ The promulgation and distribution of the "Contract Termination Procedure" booklet, with the apparent official acquiescence and approval of the School Board, without informing those to whom it was distributed that it was not a binding document, when coupled with Mr. Johnson's reliance on it, made the booklet one which should have been followed in terminating Johnson's contract and the defendants should in all fairness be estopped from claiming otherwise. While this court cannot say that the Board's decision would necessarily have been different had the time requirements and other procedures been met, neither can the court say that the plaintiff was not prejudiced in the presentation of his defense because of the failure. *See* Brininstool v. New Mexico State Board of Education, 81 N.M. 319, 466 P.2d 885, 889 (1970). Certainly he would have had more time to find another position.

■ Further comment may not be out of place here. At the hearing last Spring plaintiff attached a copy of this booklet to his showing. At that time there was no claim by the defendants that the booklet was not binding on them but only the claim that the plaintiff had not shown any damage or prejudice to him as a result of the failure to follow the time schedule. Whether the Board's seal should appear on any items which the Board has not approved and whether it is necessary to print pamphlets which are not binding on anyone is for the Board and not the courts to determine. As long as it is done and they are relied on by teachers or by persons doing business with the Board, it is only fair to apply the doctrine of estoppel.

There remains the question as to the failure to furnish Mr. Johnson with the names of the complainants and its use by the witnesses who expressed opinions as to competency.

■ We cannot expect a school board to make technical rulings on evidence and to determine, as a court can do, whether the foundation for an opinion is sufficient. Lawyers and courts do not always agree on such matters. The committee drafting rules of evidence for use in federal courts has concluded to allow the expression of opinions without testimony as to the underlying facts on which the opinion is based, believing that by cross-examination the facts can be developed. It is again at this juncture that Mr. Johnson was denied due process. Cross-examination is valueless if the witness can refuse to divulge the facts on which he or she relied for the opinion. The administration and the School Board when it determines to charge a teacher with incompetency or with immorality must be prepared to disclose the facts on which it relies and in ample time that at the statutory hearing the teacher can "respond to the reasons for the proposed cancellation of his contract." Mr. Johnson was denied due process when the names of the complainants on whose statements witnesses were to rely in expressing opinions were not furnished him a reasonable time before the hearing and when he was not allowed to cross-examine those expressing opinions as to the facts on which the opinion was based.

While plaintiff claims that the Board, the administration, and some of the witnesses appearing against him, lacked the impartiality necessary for a due process hearing, the court will refrain from passing on that issue at this time. Likewise the claim that Mr. Wekesser should have stepped aside. Counsel for the Board have assured the court that Mr. Wekesser is not one whose complaint appears in the Board file.

■ Although the question has not been answered by the United States Su-

preme Court, *see* Pickering v. Board of Education, 391 U.S. 563, 578–579, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), it is generally well settled that a combination of investigative and judicial functions within an administrative agency does not violate due process. *See, e. g.*, Pangburn v. Civil Aeronautics Board, 311 F.2d 349 (1st Cir. 1962); Belizaro v. Zimmerman, 200 F.2d 282 (3d ·Cir. 1952); United States ex rel. Catalano v. Shaughnessy, 197 F.2d 65 (2d Cir. 1952); Levers v. Berkshire, 159 F.2d 689 (10th Cir. 1947); Griggs v. Board of Trustees, 61 Cal.2d 93, 37 Cal.Rptr. 194, 389 P.2d 722, 725 (1964). No showing has been made here that convinces the court that the Lincoln School Board will not afford Mr. Johnson a fair hearing if one again becomes necessary.

 During the Board hearing, its attorney told the School Board that there were people present who wanted to testify and that they were there voluntarily and wished to make a statement concerning the plaintiff. The Board decided to hear anyone who wanted to come forward with relevant information. It was then that the one parent who testified (Mrs. Taylor) appeared. She generally related her daughter's problems with the plaintiff. The plaintiff complains that this procedure violated any due process he might have had at the hearing. I do not agree. The witness was subject to cross-examination by the plaintiff and he was free to call anyone in rebuttal. The procedure adopted by the Board allowed any interested citizen to testify on the matter; it was a procedure clearly in line with the Board's function. Whether it was contrary to the understanding between counsel does not need to be decided at this time.

 Plaintiff also complains that the minutes of the Board which announced their decision to terminate the plaintiff's employment were only signed by the president of the Board and the Board's secretary, and not by all members of the Board. Neb.Rev.Stat. § 79–1259 pro-

vides, in part: "Any indefinite contract with a permanent teacher in a fourth or fifth class school district may be canceled only by the school board, by a majority vote, *evidenced by a signed statement in the minutes of the school board. . . .*" (Emphasis supplied) There is no indication in the statute that all members of the Board must sign. The minutes in this instance were signed in the usual manner for Lincoln Board minutes. No prejudice to plaintiff is shown because of the manner of signing of the minutes.

Plaintiff makes several other claims relating to the procedures used at the hearing. Because of the court's determination that the Board's decision cannot stand, it is unnecessary to pass upon these other claims. Suffice it to say that the nature of these claims (the use of hearsay at an administrative hearing, etc.) are such that they should be handled on a case by case basis. Since a decision on these subsidiary issues is not necessary to an overall determination in this case, they will not be ruled upon at this time.

The court concludes that Mr. Johnson's contract was not terminated in the manner required by the rules of the administration and the Board, and that he was denied due process during and prior to the hearing. It follows that the Board action should be vacated and Mr. Johnson restored to his status as a tenured teacher. It does not follow that he must be returned to Millard Lefler Junior High School or even to a position as a mathematics teacher. It also does not follow that in his assignment he should be punished by the administration or by the Board. It is to be hoped that a place can be found for him in the system and that he will devote more time to teaching and conference improvement and less to outside activities.

It is ordered by the court that the Board's action be vacated and plaintiff Robert L. Johnson restored to his status as a tenured teacher.