**Lyell J. THOMAS, Plaintiff,**

v.

**Marvin WARD, Superintendent of Winston-Salem/Forsyth County Schools, et al., Defendants.**

**No. C–216–WS–71.**

United States District Court,
M. D. North Carolina,
Winston-Salem Division.

Feb. 13, 1973.

Memorandum Order March 1, 1974.

William G. Pfefferkorn and Clyde C. Randolph, Jr., Winston-Salem, N. C., for plaintiff.

William F. Womble and John L. W. Garrou, of Womble, Carlyle, Sandridge & Rice, Winston-Salem, N. C., for defendants.

## MEMORANDUM ORDER

HIRAM H. WARD, District Judge.

On September 15, 1971, plaintiff brought this action against the Superintendent, Assistant Superintendent, Principal of North Forsyth Senior High School, and members of the Board of Education, all of the Winston-Salem/Forsyth County school system. Plaintiff alleged jurisdiction arises pursuant to 28 U.S.C. § 1343, for violations of Sections 1983, 1984, 1985, 1986, 1987, and 1988 of Title 42, United States Code.

Plaintiff became a teacher in the school system in the fall of 1965. In the spring of 1971, the Board of Education failed to renew his contract. As a result, this action was commenced. Initially, plaintiff complained that the school system violated his rights to equal protection because his contract was not renewed on account of his race (white) and age (51), that he was denied administrative assistance to help correct his deficiencies, and that the hearing provided him was inadequate due to use of: vague charges against him, failure to permit him to confront and cross-examine his accusers, use of hearsay evidence, failure to open the hearing to the public, use of secret evidence against him, lack of substantial evidence against him and failure of the Board to make fact findings. Plaintiff asks for reinstatement, back pay, and compensatory damages for injury to his reputation and professional standing.

Defendants moved for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, on October 8, 1971, and presented affidavits of the Superintendent (defendant Ward) denying that race or age entered into the decision not

to rehire him. Attached were the minutes of the Board in relation to plaintiff's hearing, along with other material used by the Board in its decision.

Pursuant to stipulation, and after some discovery, plaintiff responded on August 28, 1972, with his own affidavit. He submitted a nearly complete transcript of the hearing prepared from the tape recorder used at the hearing. His affidavit stated that while he had difficulties as shown by the record, his problems were not more than those experienced by other teachers. He submitted Exhibits 1 and 2 from the deposition of Mr. Friende, presently an Assistant Superintendent, but during the relevant times the Director of Secondary Education. Those exhibits were published pamphlets distributed by the school system to all teachers. Plaintiff claimed to have relied on parts of the language in those documents as evidence of the security of his teaching position. He failed to refute the contention that his termination was not based on age.

At the hearing on defendants' motion to dismiss on November 22, 1972, counsel for plaintiff candidly admitted that plaintiff did not intend to pursue his allegations as to race or age discrimination, but instead rested his case on the contentions of whether his dismissal comported with due process of law.

The parties do not dispute any of the facts surrounding the hearing. Plaintiff entered into a contract with the school system in 1965. In 1967 the school system started using a continuing contract. The contract states that it is to be used for all professional employees

as defined in N.C.G.S. § 115–142. That statute regulates employment for persons like plaintiff.[1]

Although the record in plaintiff's personnel file reveals problems prior to 1971, it was in that year that the difficulties erupted which led to this law suit. On April 7 and 15, 1971, Mrs. Blackburn, the curriculum coordinator for North Forsyth Senior High School, observed plaintiff's classes and made certain criticisms. On April 8, 1971, plaintiff had a conference with his principal, Mr. Gibson, who expressed dissatisfaction with his performance. On April 20, 1971, plaintiff met with Assistant Superintendent Johnston, Mr. Gibson, and two assistant principals. The major question appeared to be his ability to control, and communicate with, his classes. The school officials expressed no dissatisfaction with his academic qualifications. Plaintiff requested that his classes be observed, and on April 27, 1971, Mr. Friende and Mr. Wilhelm, Assistant Principal and Secondary Supervisor of North Forsyth, visited his class. On May 7, 1971, Mr. Friende wrote a letter representing his and Mr. Wilhelm's findings. In his deposition Mr. Friende implied that those comments were to be construed as constructive criticism since he did not evaluate plaintiff with the idea that plaintiff might be subject to a nonrenewal of his contract as a result of the subsequent report. Plaintiff received a copy of this letter.

On May 11, 1971, plaintiff's principal wrote Assistant Superintendent Johnston, recommending plaintiff be relieved

---

1. N.C.G.S. § 115–142(b) is incorporated into and made a part of plaintiff's contract. It provides:

"All contracts now or hereafter entered into between a county or city board of education and a teacher, principal, or other professional employee shall continue from year to year unless terminated as hereinafter set forth. When it shall have been determined by a county or city board of education that an employee is not to be retained for the next succeeding school year it shall be the duty of the county or city superintendent to notify the employee, by registered letter deposited in mails addressed to last known address or business address of employee prior to the close of the school year, of the termination of his contract. When it shall have been determined that the services of an employee are not acceptable for the remainder of a current school year, and that the employee should be dismissed and relieved of his position immediately, the provisions and procedures of G.S. 115–67 and G.S. 115–145 shall be applicable."

of his duties for the next year. On May 25, 1971, the Superintendent, Mr. Ward, wrote plaintiff a letter stating that the School Board would be meeting on June 1, 1971, to consider the principal's recommendation that he not be rehired for the next year. Plaintiff was told that he could attend the hearing and be heard. Attached to the letter was a summary of the events leading up to the recommendation and a copy of Mr. Gibson's letter containing the reasons for the failure to renew plaintiff's contract. Plaintiff's counsel replied with a request for certain "safeguards" to be observed at the hearing.[2]

The School Board met on June 1, 1971. A tape recorder was provided and used. The Chairman of the Board stated that the formalities of law would not be followed, but that plaintiff could present evidence. Plaintiff then testified in his own behalf and denied the charges. He testified that his remedial math class included students with below average I.Q.s. He told the Board about the various methods he used to gain the students' attention. One of plaintiff's witnesses, a former teacher whose present job in industry includes evaluating teachers, testified that on personal observance of his class she found plaintiff technically very competent, but not necessarily entertaining. She noted that mathematics often by its very nature tended to be not too lively a subject for teaching purposes. Another teacher-evaluator thought plaintiff's class to be average. Some of plaintiff's students testified in his favor.

The school system did not present any witnesses. The only evidence against plaintiff consisted of the aforesaid-mentioned letters of the school officials, plaintiff's personnel file, five affidavits from plaintiff's students critical of him,[3] an affidavit from an Assistant Principal of North Forsyth, Mr. Malcolm, which indicated certain problems of a disciplinary nature had occurred between plaintiff and certain of his students. The Board decided not to renew plaintiff's contract. Its findings and conclusion appear in its minutes. Essentially it fairly represented what occurred in the hearing, but decided to give greater weight to the administrative staff's evaluation rather than to plaintiff's assertions.

Addressing the merits of the motion, defendants maintain that plaintiff was not entitled to a hearing due to the effect of N.C.G.S. § 115-142(b). Alternatively, they state that plaintiff received a hearing which satisfied due process.

Defendants' first contention must be rejected. In regard to the issue of tenure, two recent Supreme Court decisions make clear that the United States Constitution requires a hearing for public employees in two situations before their employment may be terminated. Board of Regents v. Roth, 408 U.S. 564, 92 S. Ct. 2701, 33 L.Ed.2d 548 (1972), and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

A teacher acquires a property right if he has tenure, and a hearing must be held before termination of a tenured public employee's job. Tenure

---

2. On May 28, 1971, plaintiff's attorney requested that the hearing follow certain procedures: (1) stenographic or electronic recording of the proceedings, (2) the hearing be open to the public and press, (3) all evidence be in the form of sworn testimony, (4) exclusion of hearsay evidence, (5) limit of use of plaintiff's personnel file to showing purpose of nonrenewal of his contract and that plaintiff received such correspondence addressed to him, but not for the truth of the substance therein, (6) findings of fact be made, (7) the evidence be factual rather than opinion evidence, (8) plaintiff be able

to cross-examine the Superintendent's witnesses, and be able to offer evidence on his own behalf.

3. Of these students, two had serious discipline records, one had minor problems, and two had no adverse school records. Plaintiff only found out about these facts during discovery *pendente lite*. There is no indication that the Board knew of these facts, although Mr. Malcolm's affidavit did mention disciplinary problems plaintiff had with two of the students who submitted affidavits.

may arise by either an express or implied contract right, found either in state law, the contract, and/or by the employer's practices. The law of North Carolina appears to be in accord.[4]

█ In the instant case, plaintiff relies not only on the fact that North Carolina law makes his contract a continuing one, but also on language in the "Handbook for Professional Personnel," which is given to all teachers. That pamphlet provides in pertinent part on pages 15 and 17:

### EMPLOYMENT AND ASSIGNMENT OF TEACHERS

Beginning with the 1967–68 school year, teachers in North Carolina are employed on a continuing contract basis. This means that once the teacher has signed a contract, she is employed until the teacher resigns or is dismissed. Any teacher dismissed will be notified during the school year by registered mail. Cases of dismissal are rare and result from *incompetence* or from *immoral* or *disruptable conduct*. Every effort is made to help a teacher before dismissal is considered.

\* \* \* \* \*

### EVALUATION OF TEACHERS

. . . . . .

It is the policy of the Winston-Salem/Forsyth County Schools to employ new personnel on "temporary or probationary status" for their first three years. Each person employed shall be so advised in employment interviews.

On its face, the language in the booklet appears to serve as prima facie evidence which could lead a teacher to believe that he had tenure after three years service in the school system.[5]

In addition, in this case the School Board gave the plaintiff a hearing. In a similar situation, the Fourth Circuit has held once the School Board consents to giving a teacher a hearing, the hearing must a proper one. Horton v. Orange County Board of Education, 464 F.2d 536, 538 (4th Cir. 1972).[6]

█ A public employee is also entitled to a hearing before the termination of his employment when the decision deprives him of his "liberty." The Court in Board of Regents v. Roth, *supra,* 408 U.S. at 573, 92 S.Ct. at 2707, 33 L.Ed.2d

4. In Still v. Lance, 279 N.C. 254, 182 S.E.2d 403, 406 (1971), the court dealt with the termination of a teacher's contract. It discussed N.C.G.S. § 115–142 and said of it:

Upon its face, it contains no provision concerning the duration of the employment or the means by which it may be terminated. Nothing else appearing, such a contract of employment, even though it expressly refers to the employment as "a regular, permanent job," is terminable at the will of either party irrespective of the quality of performance by the other party. (citations omitted)

Where, however, there is a business usage, or other circumstance, appearing on the record, or of which the court may take judicial notice, which shows that, at the time the parties contracted, they intended the employment to continue through a fixed term, the contract cannot be terminated at an earlier period except for cause or by mutual consent.

5. In Johnson v. Angle, 341 F.Supp. 1043 (D.Neb.1971), a math teacher's contract was terminated for much the same reasons and in much the same manner as in the instant case. The teacher claimed that his hearing was defective because he was not given the names of the complainants and the substance of their testimony in time to prepare for the hearing. The court held that the school board should have followed the rules for dismissal contained in a booklet given to teachers, but never formally adopted by the school board. It held that apparent official acquiescence estopped the board from denying that the booklet did not represent its policy. It went on to say that while hearsay may be proper in some cases, plaintiff's right to cross-examination was rendered useless by the board's failure to disclose relevant facts concerning the charges to enable the teacher to respond. It ordered reinstatement.

6. In Kota v. Little, 473 F.2d 1 (4th Cir. 1973), the court refused to apply *Horton, supra,* in a situation where the teacher appeared before the board on *his own request* and presentc vidence.

at 558, by negative · interpretation defined liberty as follows:

The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."

In Johnson v. Fraley et al., 470 F.2d 179 (4th Cir. 1972), the court apparently held that the termination of a teacher with 29 years service, even without making any charges, sufficiently injured her professional reputation and ability to secure another job so as to entitle her to a hearing. In the present case, the plaintiff did not have substantial longevity, but contends that the charges leveled against him could injure his professional reputation, and hinder him in gaining other employment. *Cf.* Wilderman v. Nelson, 467 F.2d 1173 (8th Cir. 1972). The Court in *Roth, supra*, 408 U.S. at 573, 92 S.Ct. at 2707, 33 L.Ed.2d at 558, said: "In such a case, due process would accord an opportunity to refute the charge before the University officials."

■ In summation, the record contains strong evidence of plaintiff's right to a hearing based on de facto tenure which is implied from the quoted language in the pamphlet and on the actions of the school officials. This plus the fact that the Board consented to give, and did give, plaintiff a hearing, compels the Court to hold that the hearing should have complied with minimum due process.

■ However, the Court also finds that the hearing provided plaintiff fails to satisfy due process requirements. It may be elementary to observe that the formality of the hearing depends on the interest involved and the nature of any subsequent proceedings. Boddie v. Connecticut, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113, 119 (1971). Yet, it is unlikely that a school hearing would ever include all the trappings and safeguards required in a criminal trial or juvenile proceeding. Linwood v. Board of Ed., City of Peoria, Sch. Dist. No. 150, etc., Ill., 463 F.2d 763, 770 (7th Cir. 1972); McDonough v. Kelly, 329 F. Supp. 144, 149 (D.N.H.1971).

■■ Minimal procedural due process has been defined to·include: (1) adequate notice, (2) a sufficient specification of the charges to permit the showing of error, if any, (3) an opportunity to confront and cross-examine one's accusors, (4) a list of the names and the nature of their testimony of witnesses testifying against him, (5) a hearing before an impartial board with sufficient expertise, where the employee may present evidence in his own defense. Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970); Grimes v. Nottoway County School Board, 462 F.2d 650 (4th Cir. 1972). These procedures at times confer by implication additional safeguards such as: (6) the right to have one's attorney present, (7) the right to have findings based on substantial evidence before a tribunal making written findings. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Allen v. City of Greensboro, N. C., 452 F.2d 489 (4th Cir. 1971); Keene v. Rodgers, 316 F.Supp. 217 (D.Me.1970); Johnson v. Angle, *supra*; Ramsey v. Hopkins, 320 F.Supp. 477 (N.D.Ala. 1970), modified on other grounds, 447 F.2d 128 (5th Cir. 1971). While these rights may be basic to every due process hearing, still, in every case the adequacy of the hearing must be judged on its own facts.[7] Thus

---

7. Thus, where an employee chooses to admit the allegations of the charges, the necessity of confronting and cross-examining witnesses diminishes, Duby v. American College of Surgeons, 468 F.2d 364, 370 (7th Cir. 1972), and also the need for counsel likewise loses

the court in Grimes v. Nottoway County School Board, *supra,* 462 F.2d at p. 653, said:

" '[T]he sufficiency of the procedures employed in any particular situation must be judged in the light of the parties, the subject matter and the circumstances involved', and that '[W]hen no established procedures exist the school may adopt any method that is adequate to comply with the above minimums'. *Id.* at 856." [referring to Ferguson v. Thomas, *supra*]

The Court concludes that plaintiff's hearing did not meet due process standards. However, some of plaintiff's complaints lack merit. Because of the various conferences and letters informing him of his deficiencies, plaintiff had adequate notice of, and information about, the hearings. The use of the tape recorder proved adequate. Holding a non-public hearing did not appear to harm plaintiff since he had access to the tape of the hearing. The minutes of the Board sufficiently reflected its thought process in deciding plaintiff's case.

Other facets of the hearing leave much to be desired. The School Board did not swear in the witnesses. The school system presented no live witness testimony, but relied on affidavits and letters. The lack of sworn testimony, or use of affidavits may be proper in certain situations (footnote 7). Here, however, the charges did not involve a simple one fact issue, but a value judgment requiring the opinion of professional educators. In order to ascertain the facts relied upon by the school system and to have a chance to test their validity as a basis for formulating an opinion, plaintiff needed the right to confront and cross-examine his accusors.[8] Indeed the record shows that several of the students whose affidavits were unfavorable to him had other problems in the school system. Plaintiff did not have an opportunity to elicit this information in front of the School Board. Mr. Friende, in a later deposition, seemed to indicate that his evaluation of plaintiff's performance was not done with a view of making a recommendation for renewal or termination. Cross-examination of him might have been crucial in altering the Board's evaluation of Mr. Friende's letter. The fact that Mr. Gibson and Mr. Johnston were present at the hearing, and presumably available for questioning cannot supply the deficiency. The plaintiff should have taken the initiative and asked them questions. However, other persons responsible for influencing the school system's decision were not there. *Cf.* Fielder v. Board of Ed. of Sch. Dist. of Winnebago, Neb., 346 F.Supp. 722, 730 (D.Neb.1972). Those people include Mr. Friende, Mr. Wilhelm and Mrs. Blackburn, all of whom evaluated plaintiff.

 Moreover, once plaintiff put on his evidence, which was favorable to him, the school system had the burden of going forward with substantial competent evidence.[9] This the school system

---

its importance, Allen v. City of Greensboro, N.C., *supra.* If an employee agrees to certain procedures, or fails to complain about them, his cries at a later date lose their alarm. Grimes v. Nottoway County School Board, *supra;* McDonough v. Kelly, *supra.* So, too, the use of hearsay evidence must depend on the facts of each case. Johnson v. **Angle,** *supra.* Even though they are hearsay, medical conclusions of doctors may at times properly form the entire foundation of a case. Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

8. Where no vital facts are in issue, and the conduct or competency of the teacher is not

questioned, unsworn testimony while not condoned or encouraged, may be acceptable. McDonough v. Kelly, *supra;* Johnson v. Angle, *supra.* However, where critical facts are in dispute, the Board must permit confrontation and cross-examination, unless it has a valid basis for dispensing with those rights. DeJesus v. Penberthy, 344 F.Supp. 70, 76 (D.Conn.1972).

9. As the Fifth Circuit said in Lucas v. Chapman, *infra,* at p. 948:

. . . even in the area of non-constitutional reasons, the board's decision must not be wholly unsupported by evidence else it would be so arbitrary as to be a

did not do. In the instant situation, the Board's reliance on the administrative staff's evaluation, *appearing in the letters,* did not constitute sufficient evidence to justify the nonrenewal of plaintiff's contract, in the face of plaintiff's live, contrary evidence. Thus the decision violated due process of law.

■ The above conclusion does not end the problem. Because of the lack of a full development of the facts, the Court cannot decide the issue of reinstatement. The proper procedure calls for an order that the Board afford plaintiff a proper hearing. Perry v. Sindermann, *supra.* Thereafter, the Court can consider plaintiff's claims for equitable relief and such other issues as may properly be before the Court. As a policy matter, the school board presents a better forum for resolution of disputes involving the termination of teachers' contracts, than does this Court. Lucas v. Chapman, 430 F.2d 945, 948 (5th Cir. 1970).

In light of the above discussion, and in order to give the parties a chance to resolve their differences, and to mitigate any damages which might be foreseeably imposed, it is hereby ordered:

1. That the defendants' motions for summary judgment are denied.

2. That the Winston-Salem/Forsyth County School Board will have fifteen (15) days from the date of this order to set a date to hold a hearing on the termination of plaintiff's contract. The Board will notify plaintiff at least fifteen (15) days prior to the hearing, of

his right to attend, of the specification of the charges and the names and nature of the testimony of his accusors, and comply with any other matter in conformance with this opinion. The hearing must be held within forty-five (45) days from the date of this order.

3. That after a hearing has been held, the parties will immediately notify the Court in writing of that fact and of the results. Thereafter, this case will be set for pre-trial with the view to setting a trial date as soon as the Court's calendar permits.

### MEMORANDUM ORDER

This matter comes before the Court on defendants' motion to dismiss or to stay the proceedings, and on plaintiff's motion for partial summary judgment.

The relevant facts are set out in a memorandum opinion of this Court filed on February 13, 1973. Since that time, plaintiff was given another hearing by the school board on March 27, 1973. The Court has examined the transcript of that hearing, and finds that the deficiencies of the first hearing as set out in the February 13 opinion were corrected by the March 27 hearing.

The defendants, in their motion requesting abstention and in their response to plaintiff's motion, argue that either the March 27 hearing has mooted the issues in this case, or in the alternative that this Court should abstain from deciding the issues of this case until the state courts have had a chance to decide the issues pertaining to state law.

constitutional violation. Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 106, 47 S.Ct. 302, 303, 71 L.Ed. 560, 563 (1927).

The Court expresses no view as to whether the school system's allegations would constitute substantial evidence, had they been presented properly in a hearing where plaintiff could confront and cross-examine the witnesses. However, provided that there is an adequate evidentiary basis, the Court cannot substitute its judgment for that of the school board.

Furthermore, the Court does not suggest that it condones or encourages a hearing where the public employee must first proceed. In a situation where no facts are in dispute, that type of hearing may be acceptable. In cases like the instant one in which there are disputed, critical facts, and opinion evidence, that type of procedure only serves to confuse matters and waste time. Thus the better course of action calls for the school system to put on its evidence, so plaintiff can confront and cross-examine the witnesses, and then let the plaintiff proceed.

Plaintiff on the other hand contends that the fact that both hearings were held is not in dispute and that as a matter of law he is entitled to reinstatement, damages, and attorney's fees.

The Court has concluded that the March 27 hearing given to plaintiff met due process standards as defined in the Court's opinion of February 13. In that opinion the Court emphasized that it would not substitute its judgment for that of the school board. At the March 27 hearing, the school board again decided not to renew plaintiff's contract. The members of the board present and voting in the March 27 hearing included new board members and also board members who were not present at the first hearing. The board's decision was not arbitrary or capricious and was based upon substantial evidence. Thus plaintiff is not entitled to reinstatement. The fact that plaintiff may have a property interest in continued employment does not entitle him to reinstatement, but only entitles him to a due process hearing. Perry v. Sindermann, 408 U.S. 593, 603, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). The determination of actual entitlement is best left to the state courts since that question depends on state law. This action only concerns federal constitutional and statutory claims. As the Court said in Scheelhaase v. Woodbury Central Community Sch. Dist., 488 F.2d 237, 244 (8th Cir. 1973): "Such matters as the competence of teachers, and the standards of its measurement are not, without more, matters of constitutional dimensions. They are peculiarly appropriate to state and local administration."

Since the February 13 decision by this Court, the Supreme Court has handed down two decisions that affect plaintiff's cause of action. The cases of City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), and Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973) hold that a municipal corporation is not a "person" within the meaning of 42 U.S.C. Section 1983 when equitable relief or damages is sought under that statute. Thus the only remaining defendants who may be sued and held liable are the individual school board members. Considering the uncontroverted evidence concerning the steps leading to plaintiff's nonrenewal and the two hearings held, the Court cannot find any facts which might render the individual defendants liable. As stated previously, the decision of the school board was not arbitrary.

All of the uncontroverted evidence points to the fact that the actions taken by the board members were not arbitrary and were done in good faith with a reasonable belief in the legitimacy of said action. See Street v. Surdyka, 492 F.2d 368 (4th Cir. 1974). The reasonableness of the board's action is plainly evident when it is remembered that N.C.G.S. § 115–142, as construed in the case of Still v. Lance, 279 N.C. 254, 182 S.E.2d 403 (1971), gave plaintiff no "property" right in continued employment. Moreover, the board acted quite reasonably in affording plaintiff a hearing. The fact that the original hearing may have not encompassed all the trappings necessary to satisfy due process requirements is of no consequence. The board members acted reasonably and conscientiously in fulfilling their duties. In such a case, 42 U.S.C. Section 1983 does not afford a basis for imposing liability on them. Eslinger v. Thomas, 476 F.2d 225 (4th Cir. 1973). Any damage due to injury to plaintiff's reputation is a proper consideration for the state courts.

In light of the above discussion, plaintiff is not entitled to attorney's fees. Also defendants' motion on abstention need not be considered.

The above discussion, along with the Court's memorandum opinion of February 13, 1973, constitute findings of fact and conclusions of law, pursuant to Rule 52, Federal Rules of Civil Procedure.

It is, therefore, ordered that defendants' motion to dismiss the complaint should be, and the same is hereby grant-

ed, and the plaintiff's motion for summary judgment is hereby denied.

Judgment shall be entered today accordingly.