**Dr. Rosario C. PESCE, Plaintiff,**

v.

**J. STERLING MORTON HIGH SCHOOL DISTRICT 201, COOK COUNTY, ILLINOIS, et al., Defendants.**

**No. 86 C 6209.**

United States District Court,
N.D. Illinois, E.D.

Dec. 10, 1986.

Gilbert Feldman, Cornfield & Feldman, Chicago, Ill., for plaintiff.

R. Theodore Clark, Jr., Thomas J. Piskorski, Seyfarth, Shaw, Fairweather & Geraldson, Kevin R. Sido, Christopher J. Lynch, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

Dr. Rosario Pesce, a school psychologist at Morton East High School, brought this § 1983 action against the school district, the school district's superintendent, and four members of the school district's board of education. The complaint alleges that plaintiff's constitutional rights were violated when he was suspended for a five-day period because of his failure to inform defendants that a student was contemplating suicide as a result of a sexual encounter with a faculty member. Plaintiff claims that the suspension violated an alleged First Amendment right to be silent and deprived him of property and liberty without procedural due process in violation of the Fourteenth Amendment. The complaint also purports to assert a pendent state law claim for a violation of Illinois "public policy." Defendants have moved to dismiss the complaint pursuant to Fed.R. Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons stated below, defendants' motion is granted.

### Facts

The complaint alleges that plaintiff, in his capacity as school psychologist, was informed by a female student that a sexual encounter had taken place between a male student and a male teacher at the school. The female student also shared with plaintiff a note that the male student had written to her which described the student's confusion and guilt about his sexual preference and contained a reference to suicidal tendencies. Later on the same day, the male student initiated a meeting with plaintiff. Plaintiff claims that he assured the student during this meeting of the confidentiality of the relationship and assured him that any information shared would not be divulged. Plaintiff then confronted the student regarding the themes of the letter. The student denied having suicidal intentions, and further denied that any sexual encounter had taken place with a teacher. Plaintiff arranged for the student to be treated by a professional therapist.

Plaintiff contends that he formed a professional judgment that it would not be in the student's best interest for him to breach the student's confidence to school authorities without the student's consent. Plaintiff apparently consulted several authorities, including an attorney, to determine whether he was complying with his legal, professional and employment responsibilities. Plaintiff claims that his attorney

advised him to be guided by his professional judgment as to the best interests of the student and not to release the information without the student's consent.

Approximately one week later, the student revealed to plaintiff that a sexual encounter had, in fact, taken place between himself and a teacher at the school. The student gave plaintiff permission to reveal the information, and plaintiff reported the incident to the school principal.

The superintendent recommended to the board that plaintiff be suspensed without pay for five days. A presuspension hearing was held which plaintiff attended accompanied by his attorney. Following the hearing, plaintiff was given the opportunity to provide the board with a statement of legal authorities in support of his position. The board subsequently voted to adopt the recommendation of the superintendent, and plaintiff was suspended for five days without pay. After his return, plaintiff was further relieved of certain of his former job duties.

## Discussion

In deciding a motion to dismiss, the allegations of the complaint are taken as true and viewed along with all reasonable inferences to be drawn from them in the light most favorable to plaintiff. *Powe v. City of Chicago*, 664 F.2d 639, 642 (7th Cir. 1981). A complaint should not be dismissed unless it appears beyond all doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### Due Process

 Plaintiff has a property interest in his employment by reason of his tenured status under the Illinois School Code (Ill. Rev.Stat. (1986), ch. 122, ¶¶ 1–1 *et seq.*). Plaintiff also claims a liberty interest in his professional reputation. *See Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v.*

*Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In order to state a claim under § 1983, plaintiff must not only show that his liberty and property interests have been infringed, but that he has been deprived of those interests without due process of law. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).[1]

In *Loudermill*, the United States Supreme Court set out the basic requirements for due process in a case involving the discharge of a public employee: "[t]he tenured public employee is entitled to oral and written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546, 105 S.Ct. at 1495.

 Plaintiff's complaint, on its face, shows that these requirements were satisfied in this case. The school board's rules provide that employees may be suspended for misconduct, and misconduct is defined to include "[a]ny act or failure to act occurring during the course of an employee's duties which jeopardize the health, safety and welfare of any person, student, parent or school employee." Plaintiff was notified by the school superintendent that he would recommend that plaintiff be suspended for his failure to notify school authorities about the information concerning the student. Plaintiff was notified of his right to a pre-suspension hearing, and received a hearing where he was represented by counsel and given a full opportunity to inform the board of the reasons for his actions. In addition, plaintiff was given the opportunity to file a post-hearing statement in support of the legal arguments made at the hearing. Plaintiff has alleged no irregularities in the manner in which the suspension hearing was conducted. Therefore, the basic requirements of notice and an opportunity to be heard were clearly satisfied in this case, and under *Loudermill*, plaintiff

---

**1.** For this reason, plaintiff's claims purporting to be based on a theory of "substantive due process" do not state a claim cognizable under § 1983.

has not stated a claim for violation of procedural due process.[2]

### First Amendment

Plaintiff's First Amendment claim is apparently based on an allegation that his failure to inform school officials of the student's condition and of the suspected sexual encounter involving a teacher was constitutionally protected speech, and that his suspension for remaining silent violated his right to free speech.

■ In *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983), the Supreme Court established a two-part test for determining when the discipline of a public employee violates the First Amendment. First, the court must determine whether the speech is a matter of public concern. If it is, the court must then engage in a balancing test, weighing the interest of the public employee, as a citizen, in commenting upon matters of public concern with the interests of the state, as an employer, in promoting effective and efficient public service. *See Knapp v. Whitaker*, 757 F.2d 827 (7th Cir. 1985).

■ Plaintiff has satisfied neither prong of the *Connick* analysis. First, plaintiff's silence did not regard a matter of public concern, but rather, was a private matter involving an individual student. In fact, given that the information regarding the student's suicidal tendencies and suspected sexual encounter was originally revealed to plaintiff by another student, whose communications were clearly not privileged, it is doubtful whether plaintiff can claim any First Amendment interest at all within the *Connick* analysis.

Assuming, however, that the matter could somehow be construed as one of public concern, whatever First Amendment right plaintiff might arguably have is unquestionably outbalanced by the interests of the school. Contrary to plaintiff's assertion, divulging the information would *not* have exposed plaintiff to civil or criminal liability under state law. Indeed, the very statutes plaintiff cites in support of his claimed interest in preserving confidentiality actually authorize—and even encourage—the reporting to school officials of suspected abuse by school personnel. Section 4 of the Abused and Neglected Child Reporting Act, Ill.Rev.Stat. (1986), ch. 23, ¶¶ 2051 *et seq.*, provides that any school personnel or registered psychologist "having reasonable cause to believe a child known to them in their professional capacity may be an abused child or a neglected child shall immediately report or cause a report to be made to the Department [of Children and Family Services]," and further provides that whenever such person is required to report under the Act, he "may also notify the person in charge of such ... school ... that such report has been made." [3] Thus while the statute requires that reports be made only to the Department of Children and Family Services, it authorizes reports to be made to school officials as well. Moreover, § 11 of the Illinois Mental Health and Developmental

---

2. While plaintiff makes much of the fact that he consulted several documentary sources as to his obligations, and acted in reliance upon the advice of counsel in determining his course of action, his alleged "good faith" is irrelevant to the question whether he was accorded procedural due process. In any event, as discussed *infra*, it is clear that any such reliance was misplaced.

3. Both plaintiff and defendant have misquoted or omitted to cite pertinent parts of the statute in support of their respective claims. Contrary to plaintiff's misquotation of the statute in his brief (Plaintiff Memorandum at 5), the definition of "abused child" in § 3 of the statute is *not* limited to children who are abused by "any individual residing in the same house as the child, or a paramour of the child's parent," but also includes children abused by "any person responsible for the child's welfare." Ill.Rev. Stat. (1986), ch. 23, ¶ 2053. Contrary to defendants' misquotation of the statute (Defendants' Memorandum at 12–13, n. 3), reports of abuse are *required* to be made only to the Department of Children and Family Services, although persons in plaintiff's position are also *authorized* to report to school officials. Ill.Rev.Stat. (1986), ch. 23, § 2054. Additionally, ¶ 811 of the Illinois Mental Health and Developmental Disabilities Confidentiality Code, on which defendants further rely, applies only to disclosures made in connection with civil, criminal, administrative or legislative proceedings.

Disabilities Confidentiality Act, Ill.Rev. Stat. (1986), ch. 91½, ¶¶ 801 *et seq.*, specifically authorizes the disclosure of communications in accordance with the provisions of the Abused and Neglected Child Reporting Act when the therapist determines that "such disclosure is necessary to ... protect the recipient ... against a clear, imminent risk of serious physical or mental injury or disease or death being inflicted upon the recipient, or by the recipient on himself or another." Ill.Rev.Stat. (1979), ch. 91½, ¶ 811. Underscoring the importance of the interest in protecting the welfare, health and safety of children relative to any claim of privilege is the further statutory provision that "[t]he privileged quality of communication between any professional person required to report and his patient or his client shall not apply to situations involving abused or neglected children." Ill.Rev. Stat. (1986), ch. 23, ¶ 2054.

The statute's explicit authorization of disclosure to school officials suggests the compelling nature of the school's own interest in the health, safety and welfare of its students relative to any asserted interest in confidentiality. Indeed, the American Psychological Association's Speciality Guidelines for the Delivery of Services by School Psychologists, on which plaintiff himself purports to have relied, clearly provides an exception to confidentiality in circumstances where not revealing the information "would result in clear danger to the person or to others." The school has an independent interest in identifying, protecting and aiding students who have been sexually abused by teachers, and in disciplining the teachers involved, in order to stop the abuse. The board found that the suspension of plaintiff was necessary in order to ensure that school personnel reported incidents of possible abuse—particularly when perpetrated by school employees—and notified the school of students who they were aware were contemplating suicide.

Plaintiff has cited no cases recognizing a First Amendment right for a school psychologist to remain silent when he is aware that a student is contemplating suicide because of sexual abuse by a teacher. As the Supreme Court stated in *Connick*

When a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters of only a personal interest, absent the most unusual circumstances, the federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Id.* at 147, 103 S.Ct. at 1690.

Thus, even assuming that plaintiff's silence could be interpreted as speech involving a matter of public concern, plaintiff's right to withhold information about suspected child abuse or students with suicidal tendencies is superseded by the school's interest in the welfare of its students. Plaintiff has not stated a claim for the violation of his First Amendment rights.[4]

### Pendent State Claim

Plaintiff's complaint also purports to state a pendent state law claim pursuant to Illinois "public policy" which allegedly protects the rights of a public school psychologist to exercise his professional judgment and to keep professional confidences. This court need not entertain pendent state claims after all federal causes of action have been dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 716, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Lyznicki v. Board of Education, School District 167, Cook County*, 707 F.2d 949 (7th Cir.1983). Therefore, Count II of plaintiff's complaint is also dismissed.

IT IS THEREFORE ORDERED that defendants' motion to dismiss is granted. This case is dismissed.

---

4. As a subsidiary claim, plaintiff contends that the student he counseled had a constitutional right to privacy, which plaintiff was entitled to assert on his behalf. Aside from the fact that it is by no means clear that plaintiff has standing to assert any such right derivatively, plaintiff has not shown how the alleged privacy violation gives rise to a cause of action under § 1983.