Dr. Rosario C. PESCE,
Plaintiff-Appellant,

v.

J. STERLING MORTON HIGH SCHOOL,
DISTRICT 201, COOK COUNTY, IL, et
al., Defendants-Appellees.

No. 87–1041.

United States Court of Appeals,
Seventh Circuit.

Argued May 26, 1987.

Decided Oct. 2, 1987.

Rehearing and Rehearing En Banc
Denied Nov. 2, 1987.

Gilbert Feldman, Cornfield & Feldman, Chicago, Ill., for plaintiff-appellant.

Joshua G. Vincent, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendants-appellees.

Before WOOD, CUDAHY and COFFEY, Circuit Judges.

CUDAHY, Circuit Judge.

Dr. Rosario C. Pesce was disciplined by a public school for his delay in reporting suspected child abuse by a public school teacher. Pesce claims that his federal constitutional rights of due process and privacy were thereby violated. The district court dismissed the complaint, 651 F.Supp. 152. We affirm.

## I.

The district court granted the defendants' motion to dismiss the complaint for failure to state a claim upon which relief could be granted; we therefore credit Pesce with all factual inferences.

Pesce was a tenured teacher and school psychologist at Morton East High School. On the morning of February 26, 1986, a female student ("C.R.") provided Pesce with a note written to her by a male friend ("J.D."). The note included statements apparently made by J.D. expressing guilt and confusion about his sexual preference and possible hints of suicide. C.R. also informed Pesce that J.D. had visited the home of a male faculty member where "something sexual" had occurred between them. Pesce urged C.R. to have J.D. get in touch with Pesce to discuss these matters; Pesce also asked C.R. to pass along to J.D. the name and phone number of a professional therapist. Pesce did not notify anyone else of C.R.'s communications at that time.

Later the same day, J.D. visited Pesce in his office at school. Pesce assured J.D. of the confidentiality of any information divulged and questioned him about the issues raised by the letter. J.D. denied having any current suicidal intentions and denied that any sexual acts had occurred between the male teacher and him, but stated that the teacher had once shown him "pictures" when he visited the teacher's home. J.D. also expressed a desire to have help in addressing his confusion over sexual preference. Pesce arranged for J.D. to see a therapist.

Pesce reached a professional judgment that it was in J.D.'s best interest for Pesce to honor their confidential relationship and not to inform school authorities about J.D.'s communications without his consent. Pesce considered the legal and psychological implications before choosing this course of action; he consulted with his attorney and a psychologist and considered relevant state laws, school regulations and guidelines of the American Psychological Association. After due consideration and in good faith Pesce chose not to notify any school officials of the rumored sexual activity or the suicidal tendencies.

During the following week J.D. kept two appointments with the therapist whom Pesce had recommended, but on March 5, 1986, Pesce learned that J.D. had cancelled an appointment. On March 7, Pesce met with J.D. and the therapist and discussed the advantages and disadvantages of disclosing to school officials the information about the male teacher. During that discussion J.D. revealed that in fact he and the male teacher had engaged in a sexual act. J.D. then agreed with Pesce that it would be best to reveal the information to school authorities. Pesce promptly did so.

The school superintendent asked Pesce to submit a written report of the incident; Pesce filed the report on March 13. The superintendent subsequently informed Pesce that he would recommend to the school board that Pesce be suspended without pay for five days for failure promptly to report J.D.'s possible suicidal tendencies and the alleged sexual misconduct of the male teacher. The superintendent also informed Pesce of his right to a hearing before the school board.

Pesce and his attorney requested a hearing; on May 5 they appeared at a hearing before the school board and presented a defense of Pesce's actions including documentary evidence. After the hearing was concluded, the board requested and received from Pesce's attorney a statement of supporting authorities. On May 24 the school board voted to impose a five-day suspension without pay. Pesce served the suspension beginning May 28, and upon his return to work was "demoted" from "School Psychologist" to "School Psychologist for the Behavior Disorders Program."

Pesce filed this action on August 20, 1986, alleging that the school district, acting under color of state law, violated his federal constitutional rights, *see* 42 U.S.C. § 1983, and his rights "under Illinois public policy," *see* Complaint ¶ 21. The defendants filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). After briefing, the district court granted the motion and dismissed the case.

The district court concluded that, under Illinois law, as a tenured teacher, Pesce had a property interest in his employment and that Pesce could claim a liberty interest in his professional reputation. The court determined, however, that it was evident from Pesce's complaint that he received whatever process was due when he was given notice of the reasons for his possible suspension, a presuspension hearing with counsel and certain post-hearing procedures. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The court concluded that Pesce failed adequately to allege a violation of either substantive or procedural due process.

The district court also found that Pesce failed to allege a violation either of his own first amendment rights or of a derivative constitutional right to privacy. Pesce had demonstrated neither speech (actually, in this case, silence) with respect to a matter of public concern nor a balance in favor of his rights in contrast to the interests of the state as employer. *See Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). The court also concluded that Pesce failed to establish his standing to assert J.D.'s alleged privacy right and failed to show how Pesce could state a section 1983 claim based on a violation of J.D.'s privacy right. Finally, the court declined to entertain the pendent claim alleging a violation of Illinois public policy. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

Because much of this case turns on the requirements of several Illinois laws, a brief outline of these various provisions is necessary. The Abused and Neglected Child Reporting Act, Ill.Rev.Stat. ch. 23, ¶¶ 2051 *et seq.* (the "Reporting Act"), requires that certain described individuals report suspected child abuse or neglect to the Illinois Department of Children and Family Services. The reporting requirement mandates:

> Any ... school personnel ... [or] registered psychologist ... having reasonable cause to believe a child known to them in their professional or official capacity may be an abused or a neglected child shall immediately report or cause a report to be made to the Department [of Children and Family Services].

Ill.Rev.Stat. ch. 23, ¶ 2054. As a school psychologist Pesce is subject to this reporting requirement. Ultimately it also was evident that J.D. was an "abused child" as defined in the Reporting Act.[1] Two other provisions of the same paragraph are relevant here. First:

> Whenever such person is required to report under this Act in his capacity as a member of the staff of a ... school ... he *shall* make report immediately to the Department ... and *may* also notify the person in charge of such ... school ... or his designated agent that such report has been made.

*Id.* (emphasis supplied). And second:

> The privileged quality of communication between any professional person re-

---

1. The Reporting Act defines an "abused child" as including a child under 18 years of age who is a victim of a sex offense. *See* Ill.Rev.Stat. ch. 38, ¶¶ 11-1 *et seq.* Pesce does not argue that J.D. was not in fact an abused child under this definition.

quired to report and his patient or client shall not apply to situations involving abused or neglected children and shall not constitute grounds for failure to report as required by this Act.

*Id.* The Reporting Act establishes administrative bodies to receive and act upon reports of child abuse or neglect and insures against the improper release of reports to the public. The Reporting Act also grants immunity to everyone who reports in good faith under the Act:

> Any person ... under this Act, participating in good faith in the making of a report ... shall have immunity from any liability, civil, criminal or that otherwise might result by reason of such actions. For the purpose of any proceedings, civil or criminal ... good faith ... shall be presumed.

*Id.* ¶ 2059.

The Mental Health and Developmental Disabilities Confidentiality Act, Ill.Rev. Stat. ch. 91½, ¶¶ 801 *et seq.* (the "Confidentiality Act"), is also relevant. The Confidentiality Act provides generally that all communications between a psychologist and a patient made in connection with the provision of mental health services are confidential and shall not be disclosed except pursuant to the Confidentiality Act. *Id.* ¶ 803. The Confidentiality Act permits disclosure of confidential communications of a minor between the ages of twelve and eighteen if a parent or guardian of the minor consents and either the minor consents or the therapist finds disclosure to be in the best interest of the minor. *Id.* ¶ 805. The Confidentiality Act also specifically permits disclosure of confidential communications in accordance with the Reporting Act and repeats the immunity provisions of that Act. *Id.* ¶ 811. However, the Confidentiality Act imposes a criminal penalty for any knowing violation of its provisions. *Id.* ¶ 816.

The State of Illinois requires that psychological services be available, in appropriate degree, to all children in the state system. *See* Rules and Regulations to Govern the Administration and Operation of Special Education 13–14 (Feb. 1, 1979, as amended Dec. 23, 1981) (Illinois Board of Education); Ill.Rev.Stat. ch. 122, ¶ 14–1.08. Pesce was a school psychologist employed to provide such counseling for students at Morton East High School. As a school psychologist, Pesce looked to professional guidelines for standards of behavior; the American Psychological Association adopted guidelines for school psychologists indicating:

> The school psychologist conforms to current laws and regulations with respect to release of confidential information. As a general rule, however, the school psychologist does not release confidential information, except with the written consent of the parent or, where appropriate, the student directly involved.... When there is a conflict with the force of law, or with a court order, the school psychologist seeks a resolution to the conflict that is both ethically and legally feasible and appropriate.

Specialty Guidelines for the Delivery of Services by School Psychologists ¶ 2.3.5 (American Psychological Ass'n), *reprinted in* 36 Am. Psychologist 670 (1981).

And finally, Pesce was a party to an employment contract with the school district that permitted suspension without pay for "misconduct," which was defined to include:

> Any act or failure to act occurring during the course of an employee's duties which jeopardizes the health, safety and welfare of any person, student, parent or school employee.
>
> ....
>
> Any act or failure to act which constitutes a violation or an attempt to violate any federal or state law or regulation or municipal ordinance and which relates to the employee's duties.

Employee Suspension Policy, J. Sterling Morton High School District 201 (reprinted in Appellant's App. at 24). The defendants claim that Pesce's failure to report his information about J.D. to school authorities constituted misconduct that justified imposition of a penalty of suspension without pay.

## II.

### A. Procedural Due Process

 Pesce contends on appeal that his procedural due process rights were violated because he was temporarily suspended from his position for violating standards of which he had inadequate prior notice. As noted above, Pesce's employment agreement contemplated possible suspension for any action that "jeopardize[d] the health, safety and welfare" of a student. Pesce argues both that this standard is too vague to comport with due process requirements and that he complied with the standard by acting in the best interests of the student, J.D. According to Pesce, factual questions are raised that render a trial necessary.

Viewing the facts in the light most favorable to Pesce, it is clear that he received written notice of the proposed disciplinary action and the reasons supporting the action, that he was granted a hearing to present argument and evidence with the assistance of an attorney and that he received a written statement from the school board explaining the rationale for its decision. We believe that these formal procedures adequately protected Pesce's right to procedural due process before being suspended. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542–46, 105 S.Ct. 1487, 1493–96, 84 L.Ed.2d 494 (1985); *Harrah Independent School Dist. v. Martin*, 440 U.S. 194, 197, 99 S.Ct. 1062, 1063, 59 L.Ed.2d 248 (1979) (per curiam). Pesce does not argue that the hearing itself was inadequate.

The essence of Pesce's procedural due process claim seems to be that he was punished for violating a standard too vague to be enforced, or for actually complying with the standard.[2] As to the first issue, we cannot agree that the standard applied by the school board was unconstitutionally vague. Admittedly, the requirement is broad: the teacher shall not jeopardize a student's health, safety or welfare. However, Pesce has not alleged that the requirement gave him no prior notice of re-

quirements. Illinois law establishes that teachers stand in the relation of parents to the students in their charges, and the school board has chosen to require its employees always to act in the best interests of their charges. The requirement is not arbitrary and the board's decision cannot be construed as a change in policy. Thus the cases Pesce cites are not apposite. *Cf. Brookhart v. Illinois State Bd. of Educ.*, 697 F.2d 179, 186 (7th Cir.1983) (change in graduation requirements for handicapped children violated due process because it deprived children of adequate opportunity to meet new requirements); *Johnson v. Angle*, 341 F.Supp. 1043, 1053 (D.Neb.1971) (due process violated when punishment based on unwritten, arbitrary, personal whim of school official).

We cannot agree with Pesce that he was punished for *obeying* school board requirements thus violating procedural due process. Of course, factual inferences must all be taken in Pesce's favor. Nonetheless, our role is to ensure adequate process, not guarantee perfect outcomes. *See Bishop v. Wood*, 426 U.S. 341, 349–50, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684 (1976). Pesce's complaint makes clear that he received a letter indicating that a male student, J.D., possibly was suicidal, and was informed by another student that a male teacher had engaged in sexual activity with J.D. Even though Pesce alleges that in his judgment nondisclosure was in J.D.'s best interest, we cannot agree that the school board conclusion to the contrary that Pesce's actions "jeopardized the health, safety and welfare" of students was unconstitutional. Such a conclusion was within the discretion of the board rationally to reach.

### B. Substantive Due Process

 In his argument to this court, Pesce acknowledges that his substantive due process claim depends on a rather "exceptional" and narrow doctrine, but he stresses that the facts as alleged do comprise an

---

**2.** In focusing on these claims, Pesce elides his procedural due process claims with his substantive due process claims, arguing that the stan-

dards are either so vague or applied so irrationally that they work a due process violation.

exceptional array. Essentially Pesce contends that he has been punished by one arm of the State of Illinois—the school board—for obeying the requirements of another arm—the legislature. According to Pesce, he conscientiously and scrupulously followed the dictates of state law (including the Confidentiality Act and the Reporting Act) when he decided not to inform his supervisors of allegations about and by J.D.; nonetheless, he was punished by the state for not following other inconsistent requirements.

The defendants argue that Pesce's interpretation of his legal obligations was "patently erroneous," that in fact no conflicting obligations confronted Pesce: "It could not be any clearer that state law and professional ethics *did not* require or suggest that plaintiff withhold such information from school officials until he obtained the student's consent." Appellee's Brief at 25 (emphasis in original). The defendants contend that, even if Pesce faced some conflict between his obligations as a psychologist and the school board's demands, the interest of the board is substantial and compelling in protecting students from sexual abuse and self-destruction. According to the defendants, Pesce's interest is therefore far outweighed by the school board's interest in protecting the student.

Neither the litigants' nor our own research has disclosed a case upholding a similar substantive due process claim founded on an allegation that the state has acted in a conflicting or inconsistent manner toward an individual. *But cf. In re Talmadge*, 55 B.R. 649, 651 (Bankr.N.D. Cal.1985) (inconsistent provisions in California civil procedure are ambiguous and therefore unconstitutional). Nonetheless, Pesce's claim raises substantial questions. The crux of the issue must be whether the state imposed truly inconsistent obligations in such a fashion that an individual could not avoid punishment. Perhaps the starkest example of this sort of conflict might

be posed by a state employer that discharged a state employee for failing to violate a state criminal statute. The citizen in such a situation would presumably face a choice between violating a state criminal statute and being deprived of a property interest in a job. We believe that such a dilemma posed by a state might work a violation of substantive due process in some circumstances.

Pesce, however, does not face such a stark choice, at least under Illinois law as we construe it.[3] Pesce argues in considerable detail that he followed the letter and spirit of all applicable state laws and regulations. The general outline of his argument is as follows: Communications between a patient and his psychologist are protected by a state law privilege, with limited exceptions. Pesce's discussions with J.D. were in connection with mental health counseling and therefore are protected by this privilege. The only possibly relevant exception to this privilege permits nonconsensual disclosure of information pursuant to the Reporting Act. However, Pesce did not have reasonable cause to believe that J.D. was an abused child—J.D. denied the fact and only unreliable evidence supported it. Even if reasonable cause existed, Pesce could report his suspicions only to the Department of Children and Family Services and could notify his supervisors only of the *fact* of making the report, not the substance of the report. Finally, Pesce's supervisors cannot claim that he violated the Reporting Act because they themselves apparently did not believe the fact warranted a report—they never reported any abuse to the state department.

The defendants just as vehemently contend that state laws and regulations require that Pesce notify others of his information about J.D. and the teacher; thus the school requirement that he notify his supervisors was not inconsistent with state law. As the defendants would have it:

---

**3.** We should not, unless necessary, construe Illinois law to create a constitutional violation. *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 341–56, 56 S.Ct. 466, 480–87, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). In addition,

to the extent that Pesce faces a conflict between the school board's requirements and purported *federal* privacy rights, we consider the issue in the following section.

First, Pesce's information was not at any time confidential under state law, because he received much of it from C.R., a friend of J.D. Second, no privilege applied because the Reporting Act requires disclosure of information that a child has been abused. Third, guidelines for school psychologists permit disclosure where, as here, not to disclose would result in clear danger to the patient or to others. Fourth, any person who makes a good faith report of suspected child abuse is protected by statute with immunity from civil or criminal liability, so the school could require Pesce to make all good faith disclosures.

Without a doubt there are factual issues in dispute between the parties. There are also crucial questions of Illinois law in dispute. This latter state of affairs convinces us that Pesce has not stated a violation of substantive due process because he has not alleged that the state has imposed on him clearly inconsistent demands that leave him no safe harbor. There might in principle be some merit to Pesce's general contention—the State of Illinois has applied arguably inconsistent policies to him: on the one hand, he is to protect professional confidences, but on the other, he is to inform his supervisors at school about all threats to the safety and welfare of the students. But state laws or policies are occasionally, if not frequently, at loggerheads. Unless the inconsistency of legal demands is so stark as to force a citizen to bring down the wrath of the state regardless of the decision made, the federal doctrine of substantive due process does not seem applicable.

Here, in light especially of the broad immunity granted to a citizen who in good faith reports suspected instances of child abuse, we cannot say that Illinois has placed such inconsistent demands on Pesce as to violate substantive due process.

### C. Privacy Right

Pesce argues that the school board's decision to discipline him for failing to disclose information he received in a confidential discussion with his patient J.D. violated Pesce's federal constitutional right of confi-

dentiality, which purportedly derives from J.D.'s right to privacy. The district court rejected this argument summarily:

> Aside from the fact that it is by no means clear that plaintiff has standing to assert any such [privacy] right derivatively, plaintiff has not shown how the alleged privacy violation gives rise to a cause of action under § 1983.

651 F.Supp. 152, 156 n. 4 (N.D.Ill.1986). We think the district court reached the correct result.

■ As a first step, Pesce's claim here does not even implicate the law of Illinois with respect to privacy. As noted, issues of state law certainly could arise in a federal substantive due process analysis, but Pesce cannot claim any section 1983 violation based solely on an alleged violation of state privacy rights. It may well be that Pesce can claim protection under the aegis of Illinois privacy law, but not in a § 1983 claim. *Cf.* Ill. Const. art. I § 6 ("The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable ... invasions of privacy...."); *Oden v. Cahill,* 398 N.E.2d 1061, 1062–63, 35 Ill.Dec. 111, 112–13, 79 Ill.App.3d 768, 770 (1979) (suggesting that Illinois Constitution protects right to confidentiality). The question raised by Pesce's claim is whether Illinois has so invaded the relationship between psychologist and patient as to deprive Pesce and J.D. of federal rights.

■ The Federal Constitution does, of course, protect certain rights of privacy including a right of confidentiality in certain types of information. *Whalen v. Roe,* 429 U.S. 589, 598–600, 97 S.Ct. 869, 876–77, 51 L.Ed.2d 64 (1977); *see New York v. Ferber,* 458 U.S. 747, 759 n. 10, 102 S.Ct. 3348, 3355 n. 10, 73 L.Ed.2d 1113 (1982); *H.L. v. Matheson,* 450 U.S. 398, 435, 101 S.Ct. 1164, 1184–85, 67 L.Ed.2d 388 (1981) (Marshall, J., dissenting); *Nixon v. Administrator of General Servs.,* 433 U.S. 425, 457–58, 97 S.Ct. 2777, 2797–98, 53 L.Ed.2d 867 (1977). In *Whalen* a unanimous Court upheld the validity of a New York statute that established a centralized repository of the names and addresses of all persons

who received prescriptions for certain drugs for which both a legal and illegal market existed. The plaintiffs had argued that the mandatory collection of their names and addresses violated their federally protected constitutional rights of privacy. In describing the constitutional right of privacy the Court noted that the right of privacy actually comprised two separate interests: "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Whalen,* 429 U.S. at 599–600, 97 S.Ct. at 876–77 (footnotes omitted). The Court concluded that, on its face, the New York law did not so threaten either sort of privacy interest in such a way as to violate the Constitution. This result followed in part because any threat of widespread disclosure of the information in question was too hypothetical, and in part because there was so little to suggest that the law in fact restricted the "independence" of patients to obtain certain prescriptions. *Id.* at 600–04, 97 S.Ct. at 877–78.[4]

In *Nixon v. Administrator of General Services* (which, incidentally, involved uniquely federal interests), the Court reaffirmed its holding in *Whalen, see Nixon,* 433 U.S. at 457, 97 S.Ct. at 2797, and suggested that a balancing was required between the former President's privacy interest in his personal papers and the public interest in subjecting all papers to archival screening. *Id.* at 458, 97 S.Ct. at 2797–98. Several courts have subsequently adopted this sort of balancing approach in evaluating claims of the right to confidentiality as derived from the privacy right. *See, e.g., Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia,* 812 F.2d 105, 110 (3d Cir.1987); *Taylor v. Best,* 746 F.2d 220, 225 (4th Cir.1984), *cert. denied,* 474 U.S. 982, 106 S.Ct. 388, 88 L.Ed.2d 340 (1985); *Barry v. City of New York,* 712 F.2d 1554, 1558–59 (2d Cir.), *cert. denied,* 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 723 (1983); *Fadjo v. Coon,* 633 F.2d 1172, 1175–76 (5th Cir. Unit

B Jan. 1981), *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 576–79 (3d Cir.1980). *But see Mangels v. Pena,* 789 F.2d 836, 839 (10th Cir.1986) (public disclosure of certain information held by state is permissible only for compelling state interest served in least intrusive manner); *Thorne v. City of El Segundo,* 726 F.2d 459, 469 (9th Cir.1983) (the more fundamental the privacy right threatened, the more weighty must the state's interest be), *cert. denied,* 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984); *Caesar v. Mountanos,* 542 F.2d 1064, 1067–69 (9th Cir.1976) (right of confidentiality between psychotherapist and patient is defeated by compelling state interest in ascertaining truth in legal proceedings), *cert. denied,* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 804 (1977); *cf. Whalen,* 429 U.S. at 608, 97 S.Ct. at 881 (Brennan, J., concurring) (a statute that effected a deprivation of protected privacy interest "would only be consistent with the Constitution if it was necessary to promote a compelling state interest").

In *Fraternal Order of Police,* the Third Circuit considered constitutional challenges to questionnaires used by the Philadelphia Police Department seeking detailed information from applicants to the new Special Investigation Unit of the department. The court acknowledged that the federal constitutional right of confidentiality was implicated by the questionnaires, because they demanded detailed, intimate facts concerning physical and mental health, personal financial information and personal behavior habits such as gambling and liquor consumption. (When use of the questionnaires was first proposed, applicants were to be subject to a polygraph examination after completing the questionnaire, but the department agreed not to pursue that avenue pending arbitration on the issue.) The court undertook a careful analysis of the applicants' interests in confidentiality and the state's interest in discovering information that might render an applicant unfit for the duties of the special unit, which

---

**4.** Neither the Court in *Whalen* nor we here resolve the question how a *state's* protection of professional privilege affects, if at all, a professional's (or patient's or client's) *federal* right to confidentiality, for example by a state's defining under what circumstances the privilege attaches or is waived.

included investigating corruption and narcotics. The court concluded that the state's powerful interests in creating an effective force against vice and narcotics justified the specific questionnaire involved, but the court ordered that the department be enjoined from conducting its questionnaires until adequate safeguards against unnecessary public disclosure of the information were instituted. *See Fraternal Order of Police,* 812 F.2d at 110–18.

In *Fadjo v. Coon,* the Fifth Circuit reversed the district court and found that the plaintiff had indeed stated a claim that his federal constitutional right of confidentiality was violated by the state when it unnecessarily released private information to insurance investigators. *Fadjo,* 633 F.2d at 1174. The court concluded that intimate details of the plaintiff's personal life, given to the state upon a promise of confidentiality, may not be disclosed to third parties without implicating the federal right of confidentiality. The court remanded the case for determination of the balance of interests between the state and the plaintiff.

█ We recognize that the federal right of confidentiality might in some circumstances be implicated when a state conditions continued employment on the disclosure of private information. But we cannot agree that Pesce has alleged such circumstances in the present case. Instead we conclude, like the Supreme Court in *Whalen,* that the state statutory scheme does not "pose a sufficiently grievous threat" to any right of confidentiality as to rise to a constitutional violation. *See Whalen,* 429 U.S. at 600, 97 S.Ct. at 877.

We do not necessarily agree with the district court that, as a matter of pleading, Pesce failed adequately to allege standing to assert a federal right of confidentiality.

It is far from clear that the right of confidentiality protects one party to a psychologist-patient relationship more than the other party. Indeed, significant authority suggests that the constitutional right of privacy as relevant to doctor-patient relationships applies equally to doctor and to patient. *See, e.g., Doe v. Bolton,* 410 U.S. 179, 188–89, 93 S.Ct. 739, 745–46, 35 L.Ed. 2d 201 (1973); *Griswold v. Connecticut,* 381 U.S. 479, 481, 85 S.Ct. 1678, 1679–80, 14 L.Ed.2d 510 (1965); *see also Whalen,* 429 U.S. at 595 n. 14, 604 n. 33, 97 S.Ct. at 874 n. 14, 879 n. 33 (suggesting patients' and physicians' rights are generally coextensive). As a school psychologist, Pesce may well be able to claim a right to confidentiality in his professional relationships with his patients. *Cf.* Smith, *Constitutional Privacy in Psychotherapy,* 49 Geo. Wash.L.Rev. 1 (1980).

█ However, a constitutional right to confidentiality does not protect against any and every compelled disclosure nor does it federalize every state professional privilege. *E.g., Whalen,* 429 U.S. at 602, 97 S.Ct. at 878; *Fraternal Order of Police, Lodge No. 5,* 812 F.2d at 110. And while it may not be settled what standard of review governs a claim of abridgment of a right to confidentiality,[5] we conclude in the circumstances of this case that Pesce has not adequately alleged a violation of any federal right to confidentiality.

Even if there is here a federal right to confidentiality that can be infringed only to further a compelling state interest, we conclude that such an interest is present in the present circumstances. Of critical importance here is the fact that the state is acting to protect one of the most pitiable and helpless classes in society—abused children. The Supreme Court has recog-

---

5. As noted above, some courts have concluded that a general balancing of interests—the individual's interest in confidentiality versus the public's interest in disclosure—determines the validity of state action affecting confidential information. Other courts have suggested that, once a matter is determined to be confidential (i.e., a fundamental right), any state invasion of that confidentiality must be justified by a compelling interest served by least intrusive means.

Perhaps this spectrum of approaches reflects the suggestion by Justice Marshall that a sort of sliding scale is most accurately employed in evaluating state laws that discriminate among different classes of society. *See San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 98–110, 93 S.Ct. 1278, 1330–36, 36 L.Ed.2d 16 (1973) (Marshall, J., dissenting). In any event, we need not determine this vexing issue in this case.

nized the substantial interest of a state in protecting all children, *e.g., New York v. Ferber*, 458 U.S. 747, 756–57, 102 S.Ct. 3348, 3354–55, 73 L.Ed.2d 1113 (1982); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982); *Prince v. Massachusetts*, 321 U.S. 158, 168, 64 S.Ct. 438, 443, 88 L.Ed. 645 (1944), and the Court has acknowledged special concerns arising in public schools, *e.g., Bethel School Dist. No. 403 v. Fraser*, — U.S. —, 106 S.Ct. 3159, 3164–65, 92 L.Ed.2d 549 (1986). *But cf. New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (school cannot be treated simply as surrogate for parents). A state serves a compelling interest in protecting abused children. Illinois, like other states, has adopted measures seeking to uncover instances of child abuse in order to protect children from subsequent abuse.[6] The compelling interest of the state reflects several characteristics special to abused children: they often may be unaware of their own abuse or injury; they may often be unable to report abuse; the effects of abuse may be invisible to third parties; abused children can carry physical and emotional scars for a lifetime; and of course the state bears a special responsibility to protect children who are considered unable voluntarily to choose their own course of action. *See generally* Comment, *Duties in Conflict: Must Psychotherapists Report Child Abuse Inflicted by Clients and Confided in Therapy?*, 22 San Diego L.Rev. 645 (1985). In light of the unique problems of child abuse, we find that the Illinois requirement that Pesce and others in similar positions of responsibility promptly report child abuse to a state agency does not unconstitutionally infringe any federal right of confidentiality. Pesce may have some sort of privilege under Illinois law, but that is not a matter we need address.

We of course do not purport to define the contours of any federal right to confidentiality in matters other than the one before

us. In the unique circumstances of child abuse, Illinois may constitutionally require that psychologists report to an agency of the state suspected instances of present abuse. In addition, Pesce has not contended that psychologists' reports would be too widely disseminated by the state, so we need not evaluate the adequacy of the recordkeeping procedures employed by the state. *Cf. Whalen*, 429 U.S. at 601, 97 S.Ct. at 877.

### III.

We conclude that Pesce failed adequately to allege a violation of his federal rights to procedural due process, substantive due process or confidentiality. Accordingly the judgment of the district court is

AFFIRMED.

---

6. *See* Mitchell, *Must Clergy Tell? Child Abuse Reporting Requirements Versus the Clergy Privilege and Free Exercise of Religion*, 71 Minn.L. Rev. 723, 725 n. 10 (1987) (collecting statutes);

Lombard, Michalak & Pearlman, *Identifying the Abused Child: A Study of Reporting Practices of Teachers*, 63 U.Det.L.Rev. 657, 658 n. 6 (1986) (same).