Jennifer A. MAGNUSON, Plaintiff,

v.

Officer Michael CASSARELLA,
et al., Defendants.

No. 92 C 0046.

United States District Court,
N.D. Illinois, E.D.

July 9, 1992.

Jennifer A Magnuson, pro se.

Terry L. McDonald, Connie R. Barba, Cook County State's Atty.'s Office, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Jennifer A. Magnuson brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against the Cook County Sheriff's Police Department, Officer Michael Cassarella, nine unknown police officers, Cook County Board President Richard Phelan, and sixteen commissioners of the Cook County Board, alleging violations of the United States and Illinois Constitutions and of Illinois state law. Presently before the court are (1) a motion to dismiss filed on behalf of the Cook County Sheriff's Department, Board President Phelan and the sixteen commissioners of the Cook County Board,[1] and (2) Officer Cassarella's motion to dismiss Counts III, IV, and VII–IX of Magnuson's complaint, as well that portion of Count II alleging deprivation of property. For the reasons set forth below, we grant both motions.

### I. Standard of Review

■ It is settled law that the allegations within a *pro se* complaint, "however inartfully pleaded [are held] to less stringent standards than formal pleadings drafted by lawyers...." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); *see also Maclin v. Paulson,* 627 F.2d 83, 86 (7th Cir.1980). "Such a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes*

---

1. For the sake of convenience, Board President Phelan and the sixteen commissioners of the Cook County Board collectively will be referred to as the "Board defendants."

*v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam) (citing *Haines,* 404 U.S. at 520–21, 92 S.Ct. at 596); *see also Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). As always, in ruling on each of the motions to dismiss, the court accepts as true the factual allegations of the complaint. *See Hughes,* 449 U.S. at 10, 101 S.Ct. at 176 (citing *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972)).

## II. Background

On August 15, 1991, at approximately 10:05 p.m., Officer Michael Cassarella, along with another police officer, entered Magnuson's parents home, unannounced and without a valid search warrant. Magnuson, a minor, was present at the time, as was her baby and the baby's father, identified in the complaint as Manuel. Magnuson instructed the officers to leave, but the officers refused informing Magnuson that they were responding to a report of domestic violence. At the officers' request, Magnuson produced identification for herself and Manuel.

Shortly thereafter, eight additional officers entered the Magnuson home, again unannounced and without a valid warrant. One officer, apparently inspecting the baby's condition, shined a flashlight into the baby's face. Manuel protested, leading the officer to ask who the baby belonged to. Magnuson informed the officer that the baby was hers, prompting the officer to order Manuel to hand the baby to Magnuson. Two officers escorted Magnuson and her baby into the kitchen, restraining Manuel in the living room. Responding to questioning from the officers, Magnuson informed them that she had an argument with Manuel. One of the officers shined a flashlight at Magnuson, lifting her shirt sleeve to reveal a red mark on her arm admittedly caused by Manuel.

The officers asked Magnuson to "sign a complaint" against Manuel, but she refused. In order to persuade her, the officers allegedly threatened to sign the complaint themselves and then call the Illinois Department of Children and Family Services to have the baby taken from her. Once again Magnuson refused to sign a complaint, and asked the officers to leave the premises. While Magnuson was being questioned in the kitchen, other officers in the living room told Manuel to leave. Manuel refused, claiming he had been an invited guest. The officer handcuffed Manuel, removing him from the house and bringing him to the Rolling Meadows Police Station. Another officer escorted Magnuson and her baby to a separate vehicle, likewise bringing them to the Rolling Meadows Police Station. Once at the station, Magnuson was questioned regarding her parents' opinion of Manuel, whether Manuel was affiliated with a streetgang, his birthplace, and any possible drug use. After this questioning, she and her baby were driven home by a police officer. No charges were filed against Magnuson in connection with this incident.

## III. Discussion

### A. *Cook County Sheriff's Police Department*

 Cook County Sheriff's Police Department ("CCSPD") claims that it is a nonsuable entity, and therefore must be dismissed from this case. The federal courts look to state law to determine if a defendant is amenable to suit. Fed.R.Civ.P. 17(b). To be sued in Illinois, a defendant must have a legal existence, either natural or artificial. *Jackson v. Village of Rosemont,* 180 Ill.App.3d 932, 937–38, 129 Ill. Dec. 670, 673, 536 N.E.2d 720, 723 (1st Dist.1988). Illinois law provides that CCSPD is to be maintained as a "division" of the Sheriff of Cook County, consisting of deputy sheriffs charged with the duty of law enforcement. Ill.Rev.Stat. ch. 34, ¶ 3–7001 (1992). Further, a review of the Sheriff's responsibility over such deputy sheriffs reveals that CCSPD does not enjoy a separate legal existence apart from the Sheriff of Cook County, and therefore is not a suable entity. *See Larsen v. Leak,* No. 90–7289, 1992 WL 5294, at *1, 1992 U.S.Dist. LEXIS 229, at *2–3 (N.D.Ill. Jan. 8, 1992); *Mayes v. Elrod,* 470 F.Supp. 1188,

1192 (N.D.Ill.1979). Accordingly, we grant CCSPD's motion to dismiss.

### B. *Individual Liability of Board Defendants*

■ A defendant sued in her individual capacity can only be held liable under § 1983 for her individual wrongdoing. *Rascon v. Hardiman,* 803 F.2d 269, 273 (7th Cir.1986); *Duckworth v. Franzen,* 780 F.2d 645, 650 (7th Cir.1985), *cert. denied,* 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986). As stated in *Wolf–Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.1983): "Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional violation." Thus, § 1983 does not recognize the doctrine of superiors' liability, *McKinnon v. City of Berwyn,* 750 F.2d 1383, 1390 (7th Cir.1984), or the doctrine of respondeat superior. *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).

■ Furthermore, "a showing of mere negligence on the part of state officials is insufficient to implicate an individual's [constitutional] rights for purposes of a claim under § 1983." *Rascon,* 803 F.2d at 273 (citing *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). Rather, to prevail Magnuson must allege "that the official[s] knowingly, willfully, or at least recklessly caused the alleged deprivation by [their] action or failure to act." *Id.* at 274; *see also Smith v. Rowe,* 761 F.2d 360, 369 (7th Cir.1985).

■ Even under the deferential review accorded *pro se* complaints, Magnuson has failed to state an individual claim against any of the Board defendants. Magnuson has failed to allege that any of the Board defendants participated in, directed or had knowledge of the purportedly unlawful entry into the Magnuson home on August 15, 1991. Further, her pleadings are devoid of any allegation indicating that those defendants participated in, directed or had knowledge of the events following the purportedly illegal entry, culminating in the questioning of Magnuson at the Rolling Meadows Police Station. Accordingly, we dismiss the individual claims against the Board defendants.[2]

### C. *Official Liability of Board Defendants*

■ A suit against a state officer in her official capacity is essentially an action against the state entity by which the officer is employed. *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985); *Burmeister v. Stone,* 751 F.Supp. 759, 760 (N.D.Ill.1990), *aff'd,* 958 F.2d 1419 (7th Cir.1992). Government entities, such as Cook County, cannot be held liable unless an official policy or custom caused the constitutional violation asserted in the complaint. *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Thompson v. Duke,* 882 F.2d 1180, 1187 (7th Cir. 1989), *cert. denied,* 495 U.S. 929, 110 S.Ct. 2167, 109 L.Ed.2d 496 (1990).

■ The clearest case for municipal liability under § 1983 is the case like *Monell* itself, where an unconstitutional policy statement, ordinance, regulation or decision is formally adopted and promulgated by the governing body itself. *See Monell,* 436 U.S. at 661, 98 S.Ct. at 2020 (Department of Social Services and Board of Education officially adopted a policy requiring pregnant employees to take unpaid maternity leaves before medically necessary).

■ In addition, *Monell* allows the imposition of municipal liability when the

---

**2.** Under the liberal standards of *Haines v. Kerner,* 404 U.S. at 520, 92 S.Ct. at 596, we construe Counts V–IX of Magnuson's complaint (alleging assault, battery, false arrest, negligence and malicious prosecution) to include claims pursuant to Illinois common law. While Illinois recognizes the doctrine of respondeat superior in the context of liability in tort, the Board defendants nonetheless may not be held liable for the tortious conduct of county police officers. As noted above, these officers as members of the CCSPD are accountable to the Sheriff's office, and not the Cook County Board.

challenged conduct reflects "practices of state officials ... so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691, 98 S.Ct. at 2036 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970)). "Custom and usage" by municipal employees and agents may be attributed to a municipality when the duration and frequency of the practices are sufficiently widespread so as to give rise to an inference of actual or constructive knowledge on the part of the municipality. *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir.1987), *cert. denied*, 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988); *McLin v. City of Chicago*, 742 F.Supp. 994, 998 (N.D.Ill.1990). Thus, a single incident of unconstitutional conduct is insufficient to the requisite municipal policy. *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985).[3]

■ Finally, municipal liability under § 1983 may arise from the isolated decisions of officials who possess "final policymaking authority" in the area in question. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989); *City of Saint Louis v. Praprotnik*, 485 U.S. 112, 124, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988); *Pembaur v. Cincinnati*, 475 U.S. 469, 483–84, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986). Although noting that the question of whether a particular municipal official possesses "final policymaking authority" is determined by reference to state law, the Court in *Praprotnik* set forth an elaborate definition of "final policymaking authority" for the purposes of municipal liability under § 1983: "[T]he authority to make municipal policy is necessarily the authority to make

*final* policy. [Citation omitted]. When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *Praprotnik*, 485 U.S. at 127, 108 S.Ct. at 926 (emphasis in original).

■ Under the principles set forth in *Monell* and its progeny, we conclude that Magnuson has not alleged facts sufficient to establish municipal liability on the part of the County under § 1983. Magnuson has not set forth any unconstitutional policy formally adopted by either the County or the CCSPD which proximately caused her alleged injury. Nor has she provided any evidence of similar occurrences that would raise residences, assaulting and unlawfully detaining private citizens. Further, Magnuson does not allege that her isolated incident was effectuated pursuant to the decision of an official with "final policymaking authority." Instead, the crux of the Magnuson's claim is that she was subjected to the actions of some county police officers who effectuated an unlawful entry of her residence, assaulted and unlawfully detained her. These allegations are insufficient to establish municipal liability under § 1983 and, as such, we dismiss Magnuson's claims against the Board defendants in their official capacity.

### D. *Cassarella's Motion to Dismiss*

Officer Cassarella has moved to dismiss Counts III, IV, and VII–IX of Magnuson's complaint, as well that portion of Count II alleging deprivation of property. We address each of the contested claims seriately.

---

**3.** We observe that the court in *Strauss* suggested in dicta one exception to its requirement that evidentiary allegations of more than a single episode is required. In an effort to distinguish a prior decision, the court indicated that dismissal for failure to state a claim against a municipality may not be warranted if the alleged circumstances are "sufficiently egregious that [the] plaintiff's injury alone suggest[s] an established policy." *Strauss*, 760 F.2d at 769 (citing *Murray v. City of Chicago*, 634 F.2d 365, 367 (7th Cir.1980), *cert. granted sub nom. Finley*

*v. Murray*, 454 U.S. 962, 102 S.Ct. 501, 70 L.Ed.2d 377 (1981), *cert. dismissed*, 456 U.S. 604, 102 S.Ct. 2226, 72 L.Ed.2d 366 (1982)).

Magnuson, however, does not contend that this exception is applicable to the present case. Moreover, as this court has previously noted, the egregiousness exception is elusive at best, and without further clarification from the Seventh Circuit we must defer to the general rule announced in *Strauss*. See *Rosentreter v. Munding*, 736 F.Supp. 165, 169–70 (N.D.Ill. 1990).

### 1. Count III (Deprivation of the Right of Privacy)

■ Despite the absence of a specific provision in the United States Constitution, the Supreme Court has long recognized the right to personal privacy. Generally expressed in terms of a penumbra of rights, *see Griswold v. Connecticut*, 381 U.S. 479, 484, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965), the origins of the right to privacy stem from various provisions in the Bill of Rights, including the First Amendment, *see Stanley v. Georgia*, 394 U.S. 557, 564, 89 S.Ct. 1243, 1247–48, 22 L.Ed.2d 542 (1969), the Fourth and Fifth Amendment, *see Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968), and in the Fourteenth Amendment's concept of personal liberty, *see Planned Parenthood of Southeastern Pennsylvania v. Casey*, — U.S. —, — – —, 112 S.Ct. 2791, 2805–08, 120 L.Ed.2d 674 (1992); *Roe v. Wade*, 410 U.S. 113, 153, 93 S.Ct. 705, 727, 35 L.Ed.2d 147 (1973). "This penumbra protects two types of privacy interests: the individual's interest in avoiding disclosure of personal matters and the interest in being independent when making certain kinds of personal decisions."[4] *Eastwood v. Department of Corrections*, 846 F.2d 627, 630–31 (10th Cir.1988) (citing *Whalen v. Roe*, 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977)); *see also Pesce v. J. Sterling Morton High Sch. Dist. 201*, 830 F.2d 789, 796 (7th Cir.1987).

■ The personal decisions afforded constitutional protection include those "relating to marriage, procreation, contraception, family relationships, child rearing, and education." *Casey*, — U.S. at —, 112 S.Ct. at 2807. Clearly, accepting as true the facts asserted in the complaint, Magnuson has not alleged that any defendant has infringed on her right to make a constitutionally-protected personal decision. Further, although the officers asked Magnuson questions while in the Magnuson home and at the Rolling Meadows Police Station, those questions as described by Magnuson did not solicit personal information of constitutional magnitude. *See Pesce*, 830 F.2d at 795–98 (describing the range of information afforded constitutional protection). Accordingly, we dismiss Count III of Magnuson's complaint for failure to state a claim.[5]

### 2. Count IV (Deprivation of the Right of Free Speech)

In Count IV of her complaint, Magnuson alleges that Cassarella and the other officers violated her right to free speech as guaranteed by both the United States and Illinois Constitutions. Specifically, Magnuson claims that Cassarella deprived her of her "right to speak out and question the officer's reason for [the] unlawful intrusion." To be sure, the rights secured by the First Amendment of the United States Constitution, as well as Article I, Section 4 of the Illinois Constitution, comprise those

**4.** To the extent that Magnuson is basing her privacy claim upon the right to be free from unlawful entry to her residence, such right is explicitly embodied in the Fourteenth Amendment's protection against unreasonable searches and seizures—the content of Count I of Magnuson's complaint.

**5.** In Count III, Magnuson asserts a privacy right pursuant to art. II, § 2 of the Illinois Constitution. First, it is well established, that transgression of the protection of a state constitution may not form the basis of a § 1983 claim. *Pesce*, 830 F.2d at 795. Second, art. II, § 2 of the Illinois Constitution provides: "The enumeration in this Constitution of specified powers and functions shall not be construed as a limitation of powers of state government." This provision is not a grant of the right to privacy, but rather "was probably intended ... to supersede

the case of *Field v. People ex rel. McClernand*, 3 Ill. 79 (1839), which held that a constitution is a limitation on the power of the legislative branch of government, but a grant of powers (with the attendant problems of strict construction) to the executive and judicial branches." Ill. Const. art. II, § 2 constitutional commentary (1971).

This is not to say, however, that Illinois does not recognize the right to privacy. *See* Ill. Const. art. I, § 6 ("The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable ... invasions of privacy...."); *Oden v. Cahill*, 79 Ill.App.3d 768, 770, 35 Ill.Dec. 111, 112–13, 398 N.E.2d 1061, 1062–63 (1st Dist.1979) (suggesting that Illinois Constitution protects the right to confidentiality). In any event, the allegations of Magnuson's complaint fall well outside the reach of the Illinois Constitution and the common-law right to privacy.

documents' most fundamental guarantee: freedom from governmental control over speech. *See* Laurence H. Tribe, American Constitutional Law, § 12–1, at 785–89 (2d ed. 1988) (discussing the "purpose" of the First Amendment's protection of speech). The allegations of Magnuson's complaint, however, simply do not implicate this guarantee.

Magnuson's complaint is devoid of any facts indicating that the government, via its officers, sought to punish Magnuson based on the content of her speech. Further, Magnuson has failed to allege facts sufficient to show that the officers constricted the flow of information and ideas while pursuing other goals. As described in her complaint, Magnuson was afforded ample opportunity to question the officer's authority. Indeed, amongst the abundant dialogue recounted in her complaint, Magnuson stated to the officers, "Get out of my house. You have no right to be in here." Complaint at 10, ¶ 35. That the officers disagreed with Magnuson's assessment of their authority is of no consequence to the present inquiry. To hold otherwise would suggest that a § 1983 claim might arise every time a police officer questions a potential suspect, witness or victim in conjunction with the investigation of a crime. The interest of effective law enforcement mitigates against such an outcome. Accordingly, Count IV of Magnuson's complaint is dismissed.

### 3. Count VII (False Arrest)

Count VII of Magnuson's complaint purports to state a claim for false arrest as recognized under the common law of Illinois. False arrest or false imprisonment "is an unreasonable restraint of an individual's liberty, against [her] will, caused or procured by the defendant." *Meerbrey v. Marshall Field & Co.*, 139 Ill.2d 455, 475, 151 Ill.Dec. 560, 569, 564 N.E.2d 1222, 1231 (1990). Unreasonable restraint includes "any unlawful exercise or show of force by which a person is compelled to remain where [s]he does not wish to remain or to go where [s]he does not wish to go." *Lopez v. Winchell's Donut House*, 126 Ill.App.3d 46, 49, 81 Ill.

Dec. 507, 509, 466 N.E.2d 1309, 1311 (1st Dist.1984). Further, false imprisonment requires actual or legal intent to restrain. *Id.*

"It is essential, however, that the confinement be against the plaintiff's will and if the person voluntarily consents to the confinement, there can be no false imprisonment." *Id.* at 50, 81 Ill.Dec. at 510, 466 N.E.2d at 1312 (citing *Fort v. Smith*, 85 Ill.App.3d 479, 481, 40 Ill.Dec. 886, 888, 407 N.E.2d 117, 119 (5th Dist.1980)). Assuming *arguendo* that the officers lacked legal authority to require Magnuson's presence at the Rolling Meadows Police Station, Magnuson's claim of false arrest nevertheless must be dismissed. According to the allegations of the complaint, Magnuson followed the police outside to the car in which Manuel had been placed. One of the officers said, "We are going to Rolling Meadows and we will be there for awhile." Rather than refusing, Magnuson asked if she could go back in the house and get a bottle and diapers for her baby. The officers escorted her back into the house, allowing her to retrieve the items for the baby, and then asked her to sit in the back of the police car. Upon inspection of the police vehicle and fearing for her baby's safety, Magnuson went back into the house, fetching a car seat. It is apparent from these allegations that Magnuson went to the Rolling Meadows Police Station voluntarily, presumably to clear Manuel from any wrongdoing. Accordingly, we dismiss Count VII of Magnuson's complaint.

### 4. Count VIII (Negligence)

In Count VIII of her complaint, Magnuson alleges that Cassarella and the other officers negligently violated her rights by failing "to avoid the use of unnecessary force in their dealings with [her]." As an initial matter, negligence on the part of state officials is insufficient to implicate an individual's constitutional rights for purposes of § 1983. *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir.1986) (citing *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). Under the less stringent standards afforded *pro*

*se* plaintiffs, we are faced with two diverging constructions of her claim. Either the officers negligently used excessive force in violation of state common law, or they intentionally employed such force in violation of the Fourth Amendment of the United States Constitution. In any event, Magnuson's complaint is devoid of any allegations of actual force used against her. Indeed, the only allegation of force is that the officers handcuffed Manuel, pushing and shoving him out of the house. As Magnuson lacks standing to raise any claims on behalf of Manuel, Count VIII is dismissed.

### 5. Count IX (Malicious Prosecution)

 In order to state a cause of action under Illinois law for malicious prosecution, Magnuson must allege facts showing: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Meerbrey v. Marshall Field & Co.*, 139 Ill.2d 455, 473, 151 Ill.Dec. 560, 569, 564 N.E.2d 1222, 1231 (1990) (citing *Joiner v. Benton Community Bank*, 82 Ill.2d 40, 44 Ill.Dec. 260, 411 N.E.2d 229 (1980); *Ritchey v. Maksin*, 71 Ill.2d 470, 17 Ill.Dec. 662, 376 N.E.2d 991 (1978)). Implicit in her claim of malicious prosecution is the contention that the investigation by the officers prompted by a report of domestic violence constitutes the commencement of an original criminal judicial proceeding. We disagree. As defined by Illinois law, "a prosecution is commenced by a complaint, an information, or an indictment." *Mulligan v. Village of Bradley*, 131 Ill. App.3d 513, 516, 86 Ill.Dec. 650, 653, 475 N.E.2d 1029, 1032 (3d Dist.1985) (citing Ill. Rev.Stat. ch. 38, ¶¶ 2–16, 111–1). Accordingly, Count IX of Magnuson's complaint is dismissed for failure to state a claim upon which relief may be granted.

### 6. Count II (Deprivation of Property)

 In Count II of her complaint, Magnuson alleges that Cassarella and the other officers deprived her of property without due process of law. In response, Cassarella contends that Magnuson has failed to identify the deprivation of any property, let alone without due process of law.[6] We agree. We begin with the basic axiom that " '[p]roperty interests ... are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.' " *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161, 101 S.Ct. 446, 451, 66 L.Ed.2d 358 (1980) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). As defined under Illinois law, in its broadest and most inclusive sense "property" includes "every interest anyone may have in any and everything that is the subject of ownership by [human beings], together with the right to freely possess, use, enjoy or dispose of the same." *See Davis v. Attic Club*, 56 Ill.App.3d 58, 66–67, 13 Ill.Dec. 811, 818, 371 N.E.2d 903, 910 (1st Dist.1977) (interpreting the word "property" as it appears in the Illinois Constitution of 1970). Even under this broad definition, Magnuson's complaint does not allege any facts indicating a cognizable deprivation of property. In her response to the present motion, Magnuson defines her property as "the right to be free." While the right to be free, as defined by Magnuson, may constitute a liberty interest, it is not property. Consequently, to the extent that Count II of Magnuson's complaint alleges a deprivation of property, it is dismissed.

### IV. Conclusion

For the reasons set forth above, we grant Cassarella's motion to dismiss, as well as the motion to dismiss filed on be-

---

**6.** Cassarella also points out that Magnuson's claims in Counts II and III are improperly brought under the Fifth Amendment of the United States Constitution in the absence of action taken under the color of federal law. It is axiomatic, however, that the due process clause of the Fourteenth Amendment is applicable to states and state actors, and we will construe Magnuson's claims as such.

half of the CCSPD and the Board defendants. It is so ordered.