**Lamar CHAPMAN, III, Plaintiff,**

v.

**VILLAGE OF HOMEWOOD; and Joanne Krop, Defendants.**

**No. 96 C 5297.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 17, 1997.

---

5. *See* 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3803 (1986).

Lamar Chapman, III, Matteson, IL, Pro se.

Robert K. Bush, Thomas George DiCianni, Darcy L. Proctor, Ancel, Glink, Diamond, Cope & Bush, Chicago, IL, for Village of Homewood.

William J. Borah, Homewood, IL, for Joanne Krop.

*MEMORANDUM OPINION
AND ORDER*

ASPEN, Chief Judge:

Plaintiff Lamar Chapman brings this *pro se* suit under 42 U.S.C. § 1983 against the Village of Homewood and Joanne Krop, alleging violations of various constitutional rights. Presently before us are three motions: (1) the plaintiff's motion to file a First Amended Complaint: (2) the Village's motion to dismiss; and (3) Mrs. Krop's motion to dismiss. For the reasons discussed below, we deny as moot Chapman's motion for leave to file the First Amended Complaint, grant the Village's motion to dismiss, and grant in part and deny in part Mrs. Krop's motion.

## I. Background

We take as true the well-pleaded factual allegations of the complaint and view them, as well as reasonable inferences drawn from them, in the light most favorable to the plaintiff. *Cornfield v. Consolidated High Sch. Dist. 230*, 991 F.2d 1316, 1324 (7th Cir.1993). In addition, we consider exhibits incorporated into the complaint as allegations in the complaint. *Webster v. New Lenox Sch. Dist. 122*, 917 F.2d 1004, 1005 (7th Cir.1990). In the instant case, we will evaluate the allegations of the First Amended Complaint because, pursuant to Fed.R.Civ.P. 15(a), Chapman may amend his complaint once as of right prior to the filing of an answer. Thus, the First Amended Complaint is deemed filed by operation of Rule 15(a), and we accordingly deny the plaintiff's motion for leave to file the amended complaint as moot.[1]

According to the First Amended Complaint, Defendant Joanne Krop is the wife of state court Judge Robert Krop. From what we can discern from the plaintiff's allegations, in March 1, 1994, Chapman distributed "informational election flyers" throughout the Village of Homewood, hoping to persuade citizens not to vote for Judge Krop in the upcoming judicial primary elections. Am. Compl. ¶¶ 4–7. After Judge Krop won the primary, Chapman distributed similar flyers in order to influence the general elections in November. Am. Compl. ¶ 10. The flyers contended that Judge Krop, while serving as an associate judge of the Cook County Circuit Court, had improperly adjudicated cases in which the Bank of Homewood was a party. Am. Compl., Ex. A. According to the flyers, Judge Krop had a financial interest in the Bank; the judge's financial disclosure statement for 1991 showed that the judge owed $50,000 to the Bank for a home equity loan. Am. Compl., Ex. B. Additionally, the flyers maintained that, in a case pitting Chapman against the Bank, Judge Krop had wrongly imposed monetary sanctions against Chapman. Am. Compl. Ex. A. The flyers also alluded to a citation of criminal contempt against Chapman for asking the Bank about the judge's financial records. *Id.* (For a different story of the litigation between the Bank and Chapman, see *Bank of Homewood v. Chapman*, 258 Ill.App.3d 732, 196 Ill.Dec. 726, 630 N.E.2d 891 (1993) and *Bank of Homewood v. Chapman*, 257 Ill.App.3d 337, 195 Ill.Dec. 510, 628 N.E.2d 974 (1993)).

Chapman's one-man campaign consisted of placing these flyers on the windshields of cars parked at train stations and shopping centers. But his efforts were hampered by Mrs. Krop: she allegedly removed the flyers from the cars. Am. Compl. ¶¶ 8, 12. On November 8, 1994, matters came to a head. Mrs. Krop found Chapman placing the flyers on cars in a Jewel grocery store in Homewood. She removed the flyers from the cars until Chapman stopped, and then followed Chapman as he drove to the Cherry Creek Shopping Plaza. *Id.* ¶ 18. The plaintiff tried to continue his windshield campaign there, but Mrs. Krop once again removed the

---

1. Filing complaints is apparently not something new for Chapman; he has cut a wide swath through the federal court system. A sampling includes: *Chapman v. Illinois*, No. 96–1254, 1996 WL 590554 (7th Cir. Oct.10, 1996); *Chapman v. Currie Motors, Inc.*, 65 F.3d 78 (7th Cir. 1995); *Chapman v. Burton Berger & Assocs.*, 154 B.R. 258 (Bankr.N.D.Ill.), *aff'd*, 159 B.R. 812 (N.D.Ill.1993), *aff'd*, No. 93–3525, 1995 WL 21519 (7th Cir. Jan.18, 1995), *cert. denied*, — U.S. ——, 116 S.Ct. 153, 133 L.Ed.2d 97 (1995); *Chapman v. Illinois*, No. 92 C 0120, 1992 WL 6710 (N.D.Ill. Jan.13, 1992), *aff'd*, No. 92–1385, 1992 WL 374017 (7th Cir. Dec.18, 1992); *Chapman v. Gasperec*, No. 96 C 5299, 1996 WL 515186 (N.D.Ill. Sept.6, 1996); *Chapman v. Citicorp Mortgage, Inc.*, Nos. 92 C 2862, 90 B 14910, 1992 WL 157499 (N.D.Ill. Jun. 23, 1992); *Chapman v. Citicorp Mortgage Inc.*, No. 91 C 7990, 1992 WL 59289 (N.D.Ill. March 20, 1992).

flyers. Chapman alleges that he asked her to stop, but she responded, "[I]f you don't leave my husband alone, I will get someone to kick your nigger ass," and spat in his face. *Id.* ¶ 18. The plaintiff then dialed 911 to summon the police.

Homewood police Officer Lampton arrived on the scene.[2] According to the First Amended Complaint, after Lampton "questioned Defendant Krop and learned her identity," the officer "refused to protect" Chapman and allowed Mrs. Krop to remove the flyers.[3] Am. Compl. ¶ 22. Chapman describes what happened next as follows:

> Plaintiff demanded that Officer D. Lampton ... protect his rights. In response, Officer D. Lampton verbally restrained Plaintiff with the threat of immediate incarceration if he moved from the front of her police car or uttered another word.

*Id.* ¶ 23. This suit followed, and now the Village and Mrs. Krop separately move to dismiss the complaint.

## II. Standard for Reviewing Motions to Dismiss

A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644 (7th Cir.1995);*Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). As we stated above, we must also take as true the well-pleaded factual allegations of the complaint and attached exhibits, and view the allegations as well as reasonable inferences drawn from them, in the light most favorable to the plaintiff. *Cornfield*, 991 F.2d at 1324; *Webster*, 917 F.2d at 1005. Finally, we liberally construe *pro se* complaints, recognizing that it is difficult to draft pleadings without legal assis-

tance. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972); *Kincaid v. Vail*, 969 F.2d 594, 598 (7th Cir. 1992).

## III. Discussion

### A. Village of Homewood

 The Village argues that, even assuming *arguendo* that Officer Lampton's conduct violated the plaintiff's constitutional rights, there exists no basis for municipal liability. Vicarious liability is not available under § 1983. *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1202–03, 103 L.Ed.2d 412 (1989). Instead, a municipality is liable only for constitutional violations caused by its policies. *Monell v. Department of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978).

> The caselaw has identified three instances in which a municipality can be said to have violated the civil rights of a person because of its policy: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law' "; or (3) an allegation that the constitutional injury was caused by a person with "final policy-making authority."

*Baxter by Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 734–35 (7th Cir.1994) (citations omitted). As these three categories and the text of § 1983 suggest, a "custom or usage" may still constitute the basis for municipal liability even in the absence of an express policy or of an act committed by a final policymaker. However, "isolated" acts committed by nonpolicymaking officials generally do not amount to a "custom," which " 'implies a habitual practice of a course of action that characteristically is repeated under like circumstances.' " *Sims v. Mulcahy*, 902 F.2d 524, 542 (7th Cir.1990) (quoting *Jones v. City*

---

2. The First Amended Complaint supplies only the officer's first initial, "D," and identifies the officer as female.

3. We note that the allegations actually state that the "Defendant Village of Homewood questioned" Mrs. Krop; however, construed liberally

and in context, the complaint can only mean that Officer Lampton was the pertinent questioner. In addition, the allegations name an "accomplice" who helped Mrs. Krop, but the accomplice is neither a defendant in this case nor pertinent to the resolution of this motion.

*of Chicago,* 787 F.2d 200, 204 (7th Cir.1986)). As for determining whether a government official is a final policymaker, the decision-maker must have "final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986).

Even when viewed through the generous lens with which we examine *pro se* complaints. Chapman's allegations fail to state a legally sufficient claim against the Village. Specifically, the First Amended Complaint does not implicate any of the ways in which a municipality may he said to have a policy. First, there is no explanation of an express Village policy that caused any injury. Second, although the plaintiff contends that Mrs. Krop removed flyers on several occasions, there is no allegation that *Village* police or employees engaged in a well-settled, widespread practice Finally, there is not even a hint in the complaint that Lampton was the final policymaker for the Village regarding election pamphleteering or, indeed, on any subject. *See Magnuson v. Cassarella,* 812 F.Supp. 824, 829 (N.D.Ill.1992). At bottom, Chapman merely complains of the actions of one police officer rather than Village policy. Accordingly, we dismiss the complaint as to the Village of Homewood.

### B. Joanne Krop

As for the individual defendant, Mrs. Krop proffers two reasons to dismiss the complaint: (1) she was not a state actor; and (2) even if she were a state actor, her conduct did not violate the constitutional rights upon which Chapman grounds his complaint. However, taking the, allegations as true and construing the *pro se* complaint liberally, we hold that the plaintiff has stated a claim against Mrs. Krop. This is not to say that the evidence produced in discovery will prove the allegations true, or that a properly supported summary judgment motion would be unsuc-

cessful, but rather the denial reflects the standards we must apply to evaluating motions to dismiss.

■ First, it is true that whether state action caused a constitutional deprivation involves determining whether "the party charged with the deprivation ... may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982). In particular, "joint action" between a private party and a state actor may render the private person liable under § 1983. *Cunningham v. Southlake Center For Mental Health, Inc.,* 924 F.2d 106, 107–08 (7th Cir.1991).[4] "A charge of joint action amounts to alleging some agreement between private and public actors to violate plaintiff's constitutional rights.... A requirement of the joint action charge therefore is that both public and private actors share a common, unconstitutional goal." *Id.* at 107 (citations omitted).

■ Measured against these principles, Chapman's allegations sufficiently claim that state, action caused the deprivation. Although most of the events depicted in the complaint are devoid of state action, the November 8, 1994 incident at the shopping center parking lot adequately alleges state action. After speaking with Mrs. Krop, Officer Lampton allegedly threatened the plaintiff with incarceration if he moved or spoke another word, thus preventing him from stopping Mrs. Krop's removal of the flyers. Am. Compl. ¶¶ 22–23. In his brief, Chapman also expressly alleges that Mrs. Krop "conspired" with Homewood police, and we take that to mean specifically with Officer Lampton. Pl.'s Resp. at 4.[5] It may be that the evidence

---

**4.** Although the court in *Cunningham* directed its attention to the "under color of law'" requirement in § 1983, rather than the state action requirement of the Fourteenth Amendment, and the requirements are overlapping but distinct, the distinction is unimportant to Chapman's case. *See Cunningham,* 924 F.2d at 107–08 (discussing state actor element along with under

color of law element); *cf. Lugar,* 457 U.S. at 941–42, 102 S.Ct. at 2756 (discussing joint participation as a situation that may render private party liable as state actor).

**5.** Given the liberality with which we construe *pro se* submissions, and the more general rule that factual allegations may sometimes add essential

132

will show otherwise, see, *Gramenos v. Jewel Cos.*, 797 F.2d 432, 435–36 (7th Cir.1986) (on summary judgment, insufficient evidence of conspiracy between private store and police); *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1454 (10th Cir.1995) (even if private party makes complaint to police officer, no state action if police officer makes independent decision), but for now we conclude that the plaintiff has sufficiently alleged state action.

 As to whether Mrs. Krop's actions violated the constitutional rights relied upon by the plaintiff, we agree with the defendant that two of the theories advanced in the complaint are legally insufficient. Count 1 contends that the plaintiff's "liberty rights" were violated, Am. Compl. ¶ 30, apparently under the substantive due process clause, Pl.'s Resp. at 2, but her actions do not implicate that clause. *See Planned Parenthood of Southeastern Penn. v. Casey*, 505 U.S. 833, 849, 112 S.Ct. 2791, 2805–06, 120 L.Ed.2d 674 (1992) (explaining the fundamental rights to which the Court has applied the substantive component of due process). Count 2 maintains that Chapman was deprived of property without due process, Am. Compl. ¶ 32, but the intentional, unauthorized actions of the lone officer of which he complains did not work a procedural due process violation so long as state remedies are adequate. *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3203–04, 82 L.Ed.2d 393 (1984).

 The other counts in the complaint, however, for now withstand the motion to dismiss because we cannot declare that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Counts 3 and 4, from

what we can discern, maintain that Mrs. Krop acted on the basis of Chapman's race, African–American, Am. Compl. ¶¶ 34, 36, and based on her alleged use of a racial epithet, *id.* ¶ 18, a set of facts consistent with the complaint might support relief under the Equal Protection Clause of the Fourteenth Amendment. *See Palmore v. Sidoti*, 466 U.S. 429, 432, 104 S.Ct. 1879, 1881–82, 80 L.Ed.2d 421 (1984) ("core purpose" of Fourteenth Amendment was to eliminate government discrimination based on race).[6] Additionally, Count 5 contends that the plaintiff's right to freedom of speech was violated, and given the content of the flyers and their removal by Mrs. Krop with the police officer's help, facts consistent with the complaint might support relief under the First Amendment. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382, 387, 112 S.Ct. 2538, 2542, 2545, 120 L.Ed.2d 305 (1992) (First Amendment generally prohibits content and viewpoint discrimination).[7]

 Although the race discrimination and free speech counts will not be dismissed at this time, we emphasize that the relationship between the state action requirement and the elements of the underlying constitutional rights necessarily conditions the success of the plaintiff's claims on the reasons for Officer Lampton's alleged conduct. Because Chapman relies on a joint action in order to meet the state action requirement, and because the alleged constitutional injuries may "only result from a particular motive animating the defendant," "the state actor ... must [her]self possess the required motivation." *Cunningham*, 924 F.2d at 108. In other words, Officer Lampton's own reasons for her alleged conduct must be unconstitutional ones, and not simply imputed from Mrs. Krop. Finally, we also point out that the

facts in briefs, we will consider the allegations in Chapman's briefing. *See Hrubec v. National R.R. Passenger Corp.*, 981 F.2d 962, 963–64 (7th Cir. 1992).

**6.** To the extent that Chapman is attempting to allege some other type of impermissible classification, *see* Am. Compl. ¶ 34, we conclude that the complaint insufficiently explains the gravamen of any type of equal protection violation other than one based on race.

**7.** The cases cited by Mrs. Krop in arguing that no First Amendment violation has been alleged are wide of the mark. *See* Krop's Br. at 3–4. The gravamen of the complaint is that Mrs. Krop and Officer Lampton conspired to remove the flyers, and the reasonable inference from the allegations is that the removal was inspired by the flyers' content. Whether the evidence supports those allegations is of course another question, but that set of facts is consistent with the complaint and would support relief.

scope of the complaint has been narrowed to the equal protection and free speech claims and limited only to the November 8, 1994 incident. Accordingly, Mrs. Krop's motion to dismiss is granted in part and denied in part.

### IV. Conclusion

For the reasons explained above, we deny as moot the plaintiff's motion for leave to file the First Amended Complaint, grant the Village's motion to dismiss, and grant in part and deny in part Mrs. Krop's motion to dismiss. It is so ordered.